DEFIANCE MILK PRODUCTS COMPANY, Respondent, *v.* C. CHESTER DU MOND, as Commissioner of Agriculture and Markets of the State of New York, Appellant.

Argued October 18, 1955; decided February 16, 1956.

*Robert G. Blabey* for appellant. I. The statute attacked does not apply to plaintiff's product. Under such circumstances plaintiff may not maintain the action. (*Carolene Products Co.* v. *United States,* 323 U. S. 18; *Schieffelin* v. *Komfort,* 212 N. Y. 520; *Central Westchester Humane Soc.* v. *Hilleboe,* 202 Misc. 881.) II. The statute is saved by a presumption of constitutionality which plaintiff did not overcome. (*Johnson* v. *City of New York,* 274 N. Y. 411; *Commonwealth* v. *Crowl,* 245 Pa. 554, 242 U. S. 153; *Williamson* v. *Lee Opt. Co.,* 348 U. S. 483; *Security Administrator* v. *Quaker Oats Co.,* 318 U. S. 218; *Hebe Co.* v. *Shaw,* 248 U. S. 297; *Sage Stores Co.* v. *Kansas,* 323 U. S. 32.) III. On the whole record, the weight of the proof favors the validity of the statute.

*Jacob K. Javits, Attorney-General* (*James O. Moore, Jr.,* and *Ruth Kessler Toch* of counsel), in his statutory capacity under section 71 of the Executive Law. I. It was not so irrational or unreasonable for the Legislature to decide that there was danger to the public of confusion and deception in the sale of evaporated skimmed milk in cans smaller than bulk size,

that the courts should break from the restraint they exercise in overturning the legislative judgment. (*Matter of Ahern* v. *South Buffalo Ry. Co.,* 303 N. Y. 545, 344 U. S. 367; *Thompson* v. *Wallin,* 301 N. Y. 476, 342 U. S. 485; *Matter of Fay,* 291 N. Y. 198; *United States* v. *Carolene Products Co.,* 304 U. S. 144; *Olsen* v. *Nebraska,* 313 U. S. 236; *Day-Brite Lighting* v. *Missouri,* 342 U. S. 421; *Daniel* v. *Family Ins. Co.,* 336 U. S. 220; *Williamson* v. *Lee Opt. Co.,* 348 U. S. 483; *Carolene Products Co.* v. *United States,* 323 U. S. 18; *Hebe Co.* v. *Shaw,* 248 U. S. 297; *Security Administrator* v. *Quaker Oats Co.,* 318 U. S. 218.) II. Skimmed milk and whole milk are not the same and are not to be sold interchangeably. (*Carolene Products Co.* v. *United States,* 323 U. S. 18; *Hebe Co.* v. *Shaw,* 248 U. S. 297; *Sage Stores Co.* v. *Kansas,* 323 U. S. 32.) III. That the Legislature has not prohibited the sale of fluid skimmed milk or of evaporated skimmed milk in 10-pound cans does not make the prohibition of the sale of retail size cans of evaporated skimmed milk automatically unreasonable. (*United States* v. *Carolene Products Co.,* 304 U. S. 144; *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379; *Szold* v. *Outlet Embroidery Supply Co.,* 274 N. Y. 271; *Railway Express* v. *New York,* 336 U. S. 106; *Daniel* v. *Family Ins. Co.,* 336 U. S. 220.)

*David S. Williams* for respondent. I. A constitutional question can be determined by means of an action for declaratory judgment. (*Wingate* v. *Flynn,* 139 Misc. 779, 233 App. Div. 785, 256 N. Y. 690; *Denkman* v. *Denkman,* 255 App. Div. 496.) II. The statute, insofar as it prohibits the sale of evaporated skimmed milk in less than 10-pound containers, is unconstitutional. (*Central Sav. Bank* v. *City of New York,* 280 N. Y. 9; *New York Central & H. R. R. R. Co.* v. *Williams,* 199 N. Y. 108; *Grosjean* v. *American Press Co.,* 297 U. S. 233; *Liggett Co.* v. *Baldridge,* 278 U. S. 105; *People ex rel. Pinello* v. *Leadbitter,* 194 Misc. 481, 275 App. Div. 864, 301 N. Y. 695; *Borden's Co.* v. *Baldwin,* 293 U. S. 194; *Aerated Products Co.* v. *Godfrey,* 290 N. Y. 92; *Matter of Jacobs,* 98 N. Y. 98; *Mugler* v. *Kansas,* 123 U. S. 623; *Burns Baking Co.* v. *Bryan,* 264 U. S. 504.) III. Defendant failed to prove any defense to the action. (*Flagg* v. *Nichols,* 307 N. Y. 96; *Borden's Co.* v. *Baldwin,* 293 U. S. 194; *McCoy Service* v. *New York Tel. Co.,* 163 Misc. 206; *Painton* v. *Northern Central*

*Ry. Co.,* 83 N. Y. 7.) IV. The restriction is arbitrary and unreasonable. (*Carolene Products Co.* v. *United States,* 323 U. S. 18; *United States* v. *Carolene Products Co.,* 304 U. S. 144; *Fisher Co.* v. *Woods,* 187 N. Y. 90.)

DESMOND, J. Plaintiff manufactures and sells, in 14½-ounce sealed and sterilized containers, evaporated skimmed milk, that is, cow's milk from which there has been removed all the butterfat and so much of the other fluid content as to reduce the final volume to about 45% of original volume. Not only is it stipulated that this is a wholesome product with extensive public acceptance (plaintiff alone sells 7,000,000 or more cans a year), but we all know that it is recommended by physicians and dietitians and chosen by many consumers, because of its low calorie content. It is " inferior " to whole milk or evaporated whole milk, only in the same sense that milk is inferior to cream, or bread to cake, or hamburger to sirloin, in that it has different properties, and in that it carries a lower price tag because it can be more cheaply produced.

Nonetheless, plaintiff's product cannot be sold to housewives in New York State. That result is accomplished by subdivision 2 of section 64 of the Agriculture and Markets Law, reading thus: " No person shall sell or exchange, or offer or expose for sale, or exchange, any condensed or evaporated skimmed milk, except it be in containers or packages containing ten pounds avoirdupois net weight or more, which containers or packages shall be distinctly labeled, branded or marked in block letters not less than one-half inch in height, with the words ' Condensed Skimmed Milk ' or ' Evaporated Skimmed Milk ' ". The statute takes the form of mandating containers of minimum capacity, but the minimum quantity so specified is many times larger than could or would be sold and purchased in a retail food shop. Thus, the statute has the effect of prohibiting all sales at retail for household use. Plaintiff sues for an adjudication that this statute is unconstitutional. Both courts below have agreed with plaintiff and so do we. We see no rational ground for so arbitrary and unnecessary a prevention of the sale of a wholesome food product.

The applicable rules of law are well known. Every legislative enactment carries a strong presumption of constitutionality

including a rebuttable presumption of the existence of necessary factual support for its provisions (*Borden's Co.* v. *Baldwin,* 293 U. S. 194, 209, 210). If any state of facts, known or to be assumed, justify the law, the court's power of inquiry ends (*United States* v. *Carolene Products Co.,* 304 U. S. 144, 154). Questions as to wisdom, need or appropriateness are for the Legislature (*Olsen* v. *Nebraska,* 313 U. S. 236, 246). Courts strike down statutes only as a last resort (*Matter of Ahern* v. *South Buffalo Ry. Co.,* 303 N. Y. 545, 555, affd. 344 U. S. 367) and only when unconstitutionality is shown beyond a reasonable doubt (*Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 79; *Matter of Fay,* 291 N. Y. 198, 206, 207). But, for all that, due process demands that a law be not unreasonable or arbitrary and that it be reasonably related and applied to some actual and manifest evil (*Matter of Jacobs,* 98 N. Y. 98, 110; *Fisher Co.* v. *Woods,* 187 N. Y. 90; *Nebbia* v. *New York,* 291 U. S. 502). And even though a police power enactment may have been or may have seemed to be valid when made, later events or later-discovered facts may show it to be arbitrary and confiscatory (*Abie State Bank* v. *Bryan,* 282 U. S. 765, 772).

All those rules, read together, mean that the property of a citizen including his right to sell nondeleterious substances may not be taken from him without rhyme or reason. This record shows beyond dispute that a wholesome and useful food product has by statute been excluded from sale in this State. The ostensible legislative purpose was to see to it that customers did not get evaporated skimmed milk when they were trying to buy evaporated whole milk. But plaintiff's labels plainly said: " Evaporated Skimmed Milk ". If more distinctive marking was thought necessary, the Legislature could have demanded other kinds of labels or special sizes, shapes or colors of containers. Instead, it issued its fiat that these household-size quantities could not be sold at all. Such a prohibition was, as matter of law, not a reasonable way of dealing with such confusion or possibility of confusion as the legislators might have found to exist.

Appellant argues that plaintiff failed to carry the burden of proof. We do not agree. All plaintiff had to show was that no reasonable basis existed for an absolute ban against evap-

orated skimmed milk. Since no one has been able to discover any such basis, requisite proof of unconstitutionality was present. Appellant makes much of the testimony he produced showing that some New York State inspectors, shopping at various places in several States including New York, were sold evaporated skimmed milk instead of '' evaporated milk '' for which each had asked. That showed that individual shopkeepers were defrauding their own customers, but it had no tendency to prove that plaintiff's plainly labeled product was so essentially confusing as to be punished by absolute exile. Both courts below properly found as fact that there was no fraud or deception by plaintiff.

Much of the argument on both sides here is based on conflicting interpretations of the United States Supreme Court's opinions in the two *Carolene Products* cases (304 U. S. 144, *supra,* and 323 U. S. 18). Superficially, the *Carolene* situation is much like the present case, since in *Carolene* a statute was upheld which barred Carolene's '' filled milk '' from interstate commerce. But the statute there involved was quite different from subdivision 2 of section 64 of our State Agriculture and Markets Law (*supra*). The Federal law (42 U. S. Stat. 1486, 1487; U. S. Code, tit. 21, ch. 3) forbade the shipment of '' filled milk '' but the latter term was defined to mean any milk '' whether or not condensed, evaporated, concentrated, powdered, dried or desiccated, to which has been added, or which has been blended or compounded with, any fat or oil other than milk fat, so that *the resulting product is in imitation or resemblance of milk* ''. (Italics supplied.) Congress, when passing that Federal Filled Milk Act in 1923, had before it testimony that '' filled milk '' (that is, milk with artificially added fats) was frequently or usually confused by customers with ordinary condensed milk, that shopkeepers increased this confusion by representing the product to be condensed or evaporated milk, and charged the same price for it as for condensed milk. Therefore, the Federal statute was upheld by the courts on the ground of widespread confusion and deception, lack of understanding by the public of the difference between the products, and active, systematic deception by vendors. No such proof is in this record. On the contrary, it is incredible that as of this date

shoppers do not know what is meant by "condensed skimmed milk". We must keep in mind that the *Carolene* statute was passed in 1923 and that the two *Carolene* cases were decided in 1938 and 1944, respectively. Congress had characterized "filled milk" as being "injurious to health" and "a fraud upon the public" (first *Carolene* opinion, 304 U. S. 152). Time has certainly disproved completely the first of those indictments. Ultimately, the court's basis for the ban was "deception", and "fraudulent substitution" in that the Carolene product was, in spite of proper labeling, regularly "passed off as the whole milk product" (second *Carolene* case, 323 U. S. 23, 31). There is nothing like that in this case.

Appellant suggests that respondent's sales may have been in violation of a different statutory prohibition (Agriculture and Markets Law, § 64, subd. 3) which, in language quite like that of the statute passed on in the *Carolene* cases, forbids the sale of skimmed milk to which fats have been added "so that the finished product shall be in imitation or semblance of condensed * * * milk". The testimony here shows that vegetable fats are added to plaintiff's product to replace the vitamins drawn off in the removal of butterfat from the whole milk. But no issue as to subdivision 3 (as distinguished from subd. 2) was tendered to the court or tried. Plaintiff alleged (and no one disputed it) that the prohibition against its sales was based on subdivision 2, and the 10-pound container requirement of that subdivision.

The judgment should be affirmed, with costs.

CONWAY, Ch. J. (dissenting). The problem presented to us here has to do with milk, which is ever a concern of the Legislature in its consideration of public policy and the exercise of the police power of the State for the protection and preservation of the health and welfare of our people. Further, the problem has to do not with whole milk but with skimmed milk — that is milk from which the butterfat content has been skimmed. Finally, the problem has to do with evaporated skimmed milk — sold in small 14½-ounce cans.

The Defiance Milk Products Company of Ohio (hereinafter called Defiance) commenced this action to obtain a judicial declaration that subdivision 2 of section 64 of the Agriculture

and Markets Law of the State of New York is unconstitutional. That statute reads as follows: " 2. No person shall sell or exchange * * * any condensed or evaporated skimmed milk, except it be in containers or packages containing ten pounds avoirdupois net weight or more, which containers or packages shall be distinctly labeled, branded or marked in block letters not less than one-half inch in height, with the words ' Condensed Skimmed Milk ' or ' Evaporated Skimmed Milk ' * * * "

That statute was enacted pursuant to the police power — the power inherent in a government to enact laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society. The police power " corresponds to the right of self-preservation in the individual, and is an essential element in all orderly governments, because necessary to the proper maintenance of the government and the general welfare of the community. * * * On it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property, and it has been said to be the very foundation on which our social system rests. * * * It has been said that the scope of the police power is as broad as the public welfare or necessity, and must be exercised in the interest thereof, that it is the least limitable of the powers of government, and that the police power is the broadest in scope of any field of governmental activity " (16 C. J. S., Constitutional Law, § 175). Thus, we have said in *People* v. *Nebbia* (262 N. Y. 259, 270–271) :

" But we must not fail to consider that the police power is the least limitable of the powers of government and that it extends to all the great public needs; that constitutional law is a progressive science; that statutes aiming to establish a standard of social justice, to conform the law to the accepted standards of the community, to stimulate the production of a vital food product by fixing living standards of prices for the producer, are to be interpreted with that degree of liberality which is essential to the attainment of the end in view (*Austin* v. *City of New York, supra* [258 N. Y. 113], p. 117) ; and that mere novelty is no objection to legislation (*People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429).

" The State courts should uphold State regulation whenever possible. They should be clearly convinced that a statute is unconstitutional before they declare it invalid. (Cf. *Ives* v. *South Buffalo Ry. Co.,* 201 N. Y. 271, with *Arizona Employers' Liability Cases, supra* [250 U. S. 400]; also cf. *People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1, with *Atkin* v. *Kansas, supra* [191 U. S. 207].) "

Public health and the prevention of fraud and deceit are proper subjects for the exercise of the police power (see 16 C. J. S., Constitutional Law, §§ 181–194). All matters relating to the policy, wisdom or expediency of legislation affecting a subject which lies within the police power of the State are exclusively for legislative, rather than judicial, determination. Thus, it was said in a case involving the exercise of police power, although not with respect to its exercise to protect the public health, that courts " do not sit as a super-legislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare. * * * the state legislatures have constitutional authority to experiment with new techniques; they are entitled to their own standard of the public welfare * * *." (*Day-Brite Lighting* v. *Missouri,* 342 U. S. 421, 423 [1952].) And, as was said in *Daniel* v. *Family Ins. Co.* (336 U. S. 220, 224):

" Despite evidence to the contrary, respondents see no evil to be corrected by this legislation. We are asked to agree with respondents and call the statute arbitrary and unreasonable.

" Looking through the form of this plea to its essential basis, we cannot fail to recognize it as an argument for invalidity because this Court disagrees with the desirability of the legislation. We rehearse the obvious when we say that our function is thus misconceived. We are not equipped to decide desirability; and a court cannot eliminate measures which do not happen to suit its tastes if it seeks to maintain a democratic system. The forum for the correction of ill-considered legislation is a responsive legislature." (To the same effect, see *Williamson* v. *Lee Opt. Co.,* 348 U. S. 483, 486–488 [1955].) Moreover, " the methods which it [the legislative body] employs to carry out its purposes are beyond attack without a clear and convincing showing that there is no rational basis for the

legislation; that it is an arbitrary fiat '' (*Carolene Products Co.* v. *United States,* 323 U. S. 18, 31–32).

The plaintiff here specifically attacked the 10-pound limitation imposed by the previously quoted portion of subdivision 2 of section 64 of the New York statute. That statute enjoys a presumption of constitutionality, including a rebuttable presumption of the existence of necessary factual support for its provisions (*Borden's Co.* v. *Baldwin,* 293 U. S. 194, 209, 210). The burden was upon Defiance, as the assailing party, to overcome that presumption and to establish by a clear and convincing showing that the legislative restriction did not rest upon any reasonable basis, but is essentially an arbitrary one (*Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 79; *Harman* v. *Board of Educ. of City of N. Y.,* 300 N. Y. 21, 31).

What Defiance established at the trial may be summed up as follows: It proved that it made a product called evaporated skimmed milk, which it sold in 14½-ounce retail containers. One such container was put in evidence, together with a label such as is used on these containers showing the size and type of lettering (it should be noted that the statute specifies no labeling requirement for 14½-ounce containers). There was evidence that plaintiff was prohibited from selling this product in less than 10-pound containers or packages in New York State by reason of subdivision 2 of section 64 of the Agriculture and Markets Law, and there was evidence that this resulted in a loss to Defiance. It was stipulated by the parties that the healthfulness of the plaintiff's product was not in issue. Plaintiff then rested.

The commissioner, contending that this subdivision of the Agriculture and Markets Law was enacted to prevent deception of and the perpetration of frauds upon the consuming public, produced evidence that storekeepers and sales personnel both in New York State and elsewhere had sold evaporated *skimmed* milk to customers who requested evaporated milk, i.e., evaporated whole milk. Similar evidence had been produced before the legislative committee prior to the enactment of the statute in question.

Since the protection of health and the prevention of fraud are proper subjects for the exercise of the police power, the question

to be decided is whether plaintiff has demonstrated by a clear and convincing showing that there is no rational basis for the 10-pound limitation.

In *Carolene Products Co.* v. *United States* (323 U. S. 18, *supra*), the United States Supreme Court said in the course of discussing the Filled Milk Act, which completely excludes from interstate commerce the sale of filled milk compounds having the semblance of milk (p. 24) : '' Congress evidently determined that *exclusion* from commerce of filled milk compounds in the semblance of milk *was an appropriate method* to strike at evils which it desired to suppress. Although it now is made to appear that one evil, the nutritional deficiencies, has been overcome, the *evil of confusion* remains and Congress has left the statute in effect. It seems to us clear, therefore, that there is no justification for judicial interference to withdraw these assumedly non-deleterious compounds from the prohibitions of the act.'' (Emphasis supplied.)

In the present case, as indicated (*supra*), evidence was introduced to the effect that storekeepers and sales personnel both in New York State and elsewhere had sold evaporated skimmed milk to customers who requested evaporated milk, i.e., evaporated whole milk. Similar evidence had been produced before the legislative committee prior to the enactment of the statute in question. This clearly showed that there was a real danger of confusion and fraud, at least with respect to the ordinary retail customer. That would be sufficient reason for the Legislature to take *some* action since it was dealing with a '' paramount industry '' (*People* v. *Nebbia,* 262 N. Y. 259, *supra*). The Legislature of our State has not gone as far with respect to controlling the sale of evaporated skimmed milk as Congress has with respect to preventing the sale of filled milk. It has not completely forbidden the sale of evaporated skimmed milk as Congress has done with filled milk compounds in the semblance of milk. Rather, it has merely prohibited the sale in retail size containers allowing sales to be made in containers of 10 pounds or more, presumably for the use of restaurants, bakeries and other commercial purchasers, who, the Legislature has apparently concluded, are familiar with the differences in the nature of the products so that the danger of deception or confusion is

slight. As we have said it is conceded that the healthfulness of Defiance's product is not in issue, and while that may be so in that it contains no affirmatively harmful ingredients (see 285 App. Div. 354), nevertheless, skimmed milk has not the butterfat content present and required in whole milk. Skimmed milk and skimmed milk products are in demand today, not as a general foodstuff, but rather for a restricted group of persons whose fat intake requires limitation. To give skimmed milk and skimmed milk products to persons not in this limited category will deprive them of nutrients vitally necessary to health. "Evaporated milk" in ordinary parlance is not synonymous with "evaporated *skimmed* milk", and yet there is evidence herein that purchasers requesting the former product were given instead the skimmed milk product. In the *Carolene* case (*supra*) at pages 27–28, the United States Supreme Court said the following, which is appropriate here:

"If the Filled Milk Act is applicable to the compounds whose shipment was the basis of the indictment in this case, as we have just concluded, petitioners assert that the act, as thus applied, violates the due process clause of the Fifth Amendment. Their argument runs in this manner. Since these enriched compounds are admittedly wholesome and sold under trade names with proper labels without the commission of any fraud by petitioners on the public, Congress cannot prohibit their interstate shipment without denying to petitioners a right protected by the due process clause, the right to trade in innocent articles. They rely upon *Weaver* v. *Palmer Bros. Co.*, 270 U. S. 402, and continue their protest against the refusal of the trial court to receive the evidence as to the wholesomeness of their product.

"We do not need to consider the refusal of the trial court to receive evidence of the purity and wholesomeness of petitioner's products. Such evidence could be material only if the sole basis for Congressional action was impurity and unwholesomeness. Under the first point of this opinion, we have determined that the avoidance of confusion furnished a reason for the enactment of the Filled Milk Act. The trial court took judicial notice, as did the District Court of the District of Columbia, *United States* v. *Carolene Products Co.*, 51 F. Supp. 675, 678–79, and

as we do, of the reports of the committees of the House of Representatives and the Senate which show that other considerations than nutritional deficiencies influenced the prohibition of the shipment of filled milk in interstate commerce. These unchallenged reports, as we indicated in part ' First ' above, furnish an adequate basis, other than unwholesomeness, for the action of Congress. The reports show that it was disputable as to whether wholesome filled milk should be excluded from commerce because of the danger of its confusion with the condensed or evaporated natural product or whether regulation would be sufficient. The power was in Congress to decide its own course. We need look no further.''

Likewise, in *Hebe Co.* v. *Shaw* (248 U. S. 297), the United States Supreme Court upheld the validity of an Ohio statute which prohibited the sale of condensed milk made otherwise than from whole milk against an attack under the Fourteenth Amendment. It was assumed that the compound was wholesome and it was properly labeled. The act was sustained, however, as a proper exercise of legislative power to protect the public against fraudulent substitution.

So, here, the Legislature, recognizing the existence of a danger of confusion to the ordinary purchaser, has acted, in the exercise of its police power, to protect such purchasers in this State against that danger. As we have already pointed out the Supreme Court has declared in the *Carolene* case (*supra*) at pages 31–32: '' * * * the methods which it [the legislative body] employs to carry out its purposes are beyond attack without a clear and convincing showing that there is no rational basis for the legislation; that it is an arbitrary fiat.'' It was there reiterated that legislation by Congress completely preventing the sale of a product which might be confused with another was not an arbitrary fiat. If the danger of confusion authorizes Congress to completely exclude the sale of a product from interstate commerce, how then can it be successfully urged that a partial restriction upon the sale of a product imposed by a State Legislature to eliminate the danger of confusion, known and demonstrated to exist, is an arbitrary fiat, without rational basis? The question posed answers itself — the plaintiff has failed to carry the heavy burden of proving that there was no rational basis for the legislation.

At the time this restriction was enacted in 1922 there was proof before the Legislature of deception or confusion. During the 1952 session of the New York Legislature an amendment was considered which would have eliminated the 10-pound limitation from subdivision 2 of section 64. That amendment, however, failed of passage, and the restriction was continued. The reason for continuing it seems obvious — the Legislature has found that the danger still exists. The Legislature with its committees and its means for conducting hearings is equipped to ascertain the existence of such a danger. We are not.

We think that what the Official Referee and the majority writers in the Appellate Division did was to properly state the rule that the burden of proof is on the plaintiff milk company, but after conceding that the public had been deceived they then, in applying the rule as to the burden of proof, reached the conclusion that the deception was caused by someone other than the milk company, and that *the State had not carried the burden* of showing that its determination as to the manner and method by which to protect the public was the right way to do it. That was a shifting of the burden of proof. Once the Legislature determined that the public was being " defrauded " however, it was for the Legislature to decide how to prevent the defrauding. It does not lie with the courts to say whether it was the dealers who sold the evaporated skimmed milk who were to blame rather than the milk company. That was clearly for the Legislature. As it appears from the quotation (*supra*) from *Day-Brite Lighting* v. *Missouri* (342 U. S. 421, 423), the Supreme Court has said that when it comes to protecting the public the Legislature may even experiment as to the best manner in which to do it, and no court may act as a super-legislature. It is within the competency of the Legislature to declare public policy in order to protect the public and the courts may not intrude in order to disregard the legislative determination and substitute one of their own.

It should be noted, also, that one of the plaintiff's products is more than simply evaporated skimmed milk. The record discloses that this product consists of evaporated skimmed milk to which has been added a concentrated oil containing vitamin A. Doubtless, this adds to the nutritive value of the milk product, but it also would appear to remove that product from the

category encompassed by the second subdivision of section 64 of the Agriculture and Markets Law. By motion at the trial the commissioner raised this point, and it appears to have considerable merit. We do not, however, deem it necessary to pass upon this phase of the case in view of our decision regarding the validity of the 10-pound restriction upon the size of retail containers of evaporated skimmed milk.

The judgments should be reversed, and the complaint dismissed, with costs in all courts.

FULD, VAN VOORHIS and BURKE, JJ., concur with DESMOND, J.; CONWAY, Ch. J., dissents in an opinion in which FROESSEL. J., concurs; DYE, J., taking no part.

Judgment affirmed.