Chief Judge Desmond (dissenting).
Of plaintiffs’ several serious and impressive arguments against the validity of sections 7 and 9 of chapter 531 of the Laws of 1964, one remains unanswered and to my mind unanswerable. It comes down to this: mandatory establishing of minimum prices for sales by bottle or case of “brand name ” alcoholic beverages is beyond the power of our ¡State legislation, is an unconstitutional (U. S. Const., 5th and 14th Amdts.; N. Y. Const., art. 1, § 6) taking of private property without due process or compensation, and is not justified as a police power exercise since it is not necessary for or related to the health, safety, morals or welfare of the State’s inhabitants or required by any emergency. Bringing New York State liquor prices into line with those of comparable localities may accord with some concepts of fairness, and our people may have cause to complain about marketing and pricing practices of plaintiffs which are said to result in the charging of premium prices in the package stores of New York State. But we are talking now about constitutional protections against arbitrary interferences by government with free price markets. Statutory price controls on food, housing accommodations or other essentials of life is a valid exercise of the State’s far-ranging police power which is born out of public needs (Nebbia v. New York, 291 U. S. 502, 525 et seq.). Those items are regulated as to price because they are among the “ great public needs ” referred to in People v. Nebbia (262 N. Y. 259, 270). But even the police power is limitable and the courts have the same duty to nullify unconstitutional legislative acts as to uphold statutes which satisfy or tend to satisfy or may reasonably be expected to satisfy some health, safety or welfare need. If no such relevance is discoverable, a statute infringing on the constitutionally protected rights of private property in price-fixing or similar restraints must fall (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537; Trio Distr. Corp. v. City of Albany, 2 N Y 2d 690; Loblaw, Inc. v. New York State Bd. of Pharmacy, 11 N Y 2d 102). In each of those three cases we held a statute violative of *61 due process because it needlessly and arbitrarily forbade an otherwise valid business practice.
No one will question the traditional rights of the States (taken away by the Eighteenth Amendment but restored by the Twenty-first) under their inherent police power to prohibit, restrain or regulate the manufacture, sale' and use of intoxicants (Matter of Trustees of Calvary Presbyt. Church v. State Liq. Auth., 245 App. Div. 176, 178, affd. 270 N. Y. 497; Mahoney v. Triner, 304 U. S. 401). The New York Legislature has power to enact a variety of laws calculated to suppress intemperance or to minimize the known evils of the liquor traffic, since the trade is one as to which there is a recognized public interest. But ‘ ‘ police power ” is not a magic incantation to frighten off judicial investigation into the constitutionality of statutes. The State of New York could completely outlaw the sale of liquor but, having chosen instead to regulate it, the restrictions and requirements can be such only as are nécessary to protect public safety, health and morals from the evils, known or apprehended, of the trade. The State’s licensees may be subjected to the strictest supervision and control (as scores of appellate court decisions in this State attest) but such supervision and control must at least tend to preserve public order and discourage the intemperate use of alcohol. No one has yet told us how any of these lawful purposes could be accomplished or furthered by forcing liquor prices down to the bottom level found anywhere in the United States. To promote temperance by making intoxicants cheaper is like trying to minimize the dangers of excessive smoking by abolishing cigarette taxes.
This statute cannot be saved by recourse to the familiar aphorisms about presuming a statute’s constitutionality or presuming that investigation has shown necessity, or avoiding the substitution of a court’s judgment for a Legislature’s, or the like. Those who attack a price-fixing law have the burden of showing its unconstitutionality beyond any reasonable doubt (Lincoln Bldg. Assoc. v. Barr, 1 N Y 2d 413) but that burden is met when the attackers show as they do here that the only reason suggested or available for its enactment — that is, eliminating "price discrimination” against our State’s residents has no relationship to any public need or evil of the kind which justifies use of the police power (Defiance Milk Prods. Co. v. Du Mond, *62 309 N. Y. 537, 540-541, supra). Indeed, in section 8 of those 1964 amendments to section 101-b of the Alcoholic Beverage Control Law, the Legislature has forthrightly told us that its purpose and interest was solely to reduce the prices charged for brand-name liquor in this State. That was a long retreat from the old announced policy (see old § 101-c as enacted in 1950) of promoting temperance by eliminating price wars, by prohibiting sales below announced minima and by mandating resale price maintenance. It is a non sequitur that, since artificially jacking up the prices under earlier statutes did not promote temperance, forcing them down to the lowest levels in the whole country will be a step toward moderation in use.
It is suggested that we should respect and accept the judgment of the Legislature and the Governor that price limitation will further temperance. But the assumption that such was the purpose runs against the declared fact. Neither the Governor nor the Legislature ever offered such a vain argument, and we must remember that sections 7 and 9 were not among the recommendations of the distinguished Moreland Act Commissioners appointed by the Governor. Temperance is a laudable objective and a proper State purpose but no one has the temerity to assert that cut-price liquor cuts down drinking. Therefore, it follows of absolute necessity that these amendments have nothing to do with the State policy written into section 2 of the State Alcoholic Beverage Control Law right after repeal of National Prohibition : ‘ to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to law.”
Even if these statutes could survive Federal constitutionality tests they are void for arbitrariness under our own decisions such as Defiance Milk Prods. Co. v. Du Mond (309 N. Y. 537, supra); Trio Distr. Corp. v. City of Albany (2 N Y 2d 690, supra); Grove Hill Really Co. v. Ferncliff Cemetery Assn. (7 N Y 2d 403, 410), and Loblaw, Inc. v. New York State Bd. of Pharmacy (11 N Y 2d 102, supra). Police power statutes under the New York State Constitution are valid only if the legislation is addressed to a legitimate end and, also, if the measures taken are reasonable and appropriate to that end (Matter of People [Tit. & Mtge. Guar. Co.], 264 N. Y. 69, 83)—that is, such a *63 statute must be 1 ‘ reasonably related and applied to some actual and manifest evil (Defiance Milk Prods. Co. v. Du Mond, supra, p. 541; Twentieth Century Assoc. v. Waldman, 294 N. Y. 571, 580, app. dsmd. 326 U. S. 697; East N. Y. Sav. Bank v. Hahn, 293 N. Y. 622, 627, affd. 326 U. S. 230; Matter of Department of Bldgs. of City of N. Y. [Philco Realty Corp.], 14 N Y 2d 291, 297.) The only “ evil ” against which this legislation is directed is found, apparently, in the fact that some people somewhere in this country under other unknown and uninvestigated conditions buy liquor more cheaply than we do. If this be good law, similar statutes may be passed as to any sale-licensed commodity.
I do not, although I do not discuss them at length, overlook a number of other troublesome aspects of these amendments. These difficulties may be summed up by the statement that it is wholly arbitrary to force New York State liquor prices down to the lowest level prevailing anywhere in America, despite higher license fees charged in this State, despite higher wages and salaries here (and conversely a small volume of sales by some of the distributors-plaintiffis), despite the fact that abnormally low prices somewhere in the country may be due to temporary conditions totally unrelated to New York State prices, and despite the predictable and remarkable result that the distillers now may (or must) raise prices elsewhere in order to reap even a better harvest in the enormous New York State market.
The judgment should be reversed and judgment directed for plaintiffs as demanded in the complaint, with costs in all courts.
Judges Dye, Van Voorhis and Scileppi concur with Judge Bergan; Chief Judge Desmond dissents and votes to reverse in an opinion in which Judges Fuld and Burice concur.
Order affirmed.