■ SHELDON H. SOLOW, Respondent, v. CITY OF NEW YORK, Appellant.— In an action to reform a deed, defendant appeals, as limited by its brief, from (1) an amended judgment of the Supreme Court, Queens County, entered August 4, 1964 upon the court's opinion-decision after a nonjury trial, which directed that said deed, dated April 25, 1961, be corrected so as to state that a "one-dollar condemnation clause" is applicable only with respect to any portion of the premises lying within the bed of any street shown on a map as of August 25, 1952 instead of on a map as of April 25, 1961; and (2) an order of said court, entered October 23, 1964, which granted plaintiff's motion to retax his bill of costs at $409 instead of $180 and directed amendment of said judgment accordingly. Amended judgment reversed on the law and the facts, without costs, and complaint dismissed, without costs. Findings of fact inconsistent herewith are reversed, and new findings are made in accordance herewith. Appeal from order dismissed, without costs, as academic. Defendant's motion, made during trial, to amend its answer so as to set forth counterclaims for reformation and for other relief in accordance with its proposed amended answer is granted; and judgment is directed to be entered in favor of defendant on its said counterclaims, without costs, on condition that defendant execute and deliver to plaintiff all instruments necessary to perfect the title of plaintiff and his successors in interest with respect to that portion of the land formerly under water which was not taken in condemnation on September 17, 1963 for street and park purposes, on payment by plaintiff to defendant of $14,042.56. On April 25, 1952, by virtue of an in rem foreclosure of taxes, defendant City of New York became the owner of tax lots 1 and 7 in Block 232 as shown on the October 22, 1951 Tax Map for the Borough of Queens. On June 26, 1952 the Board of Estimate resolved to authorize a sale at public auction of the said tax lots on the following conditions: (1) that in the event of condemnation of any part of the premises lying within the bed of any street shown on the then city map (meaning the map of Oct. 22,

1951), the purchasers, their successors or assigns shall only be entitled to one dollar; and (2) that the minimum price shall be $4,700. The proof shows that the said tax lots had as their westerly boundary the waters of Jamaica Bay and did not include land under the waters of Jamaica Bay. Title to the land under the waters of Jamaica Bay was in the City of New York (L. 1909, ch. 568; L. 1912, ch. 522; L. 1939, ch. 850). Although there was some proof that the appraisal made by the City of New York prior to the auction sale on August 25, 1952 included not only the upland, but the land under the waters of Jamaica Bay, that proof is obviously an error. The appraisal could lawfully be only of the tax lots to be sold at auction and those tax lots did not include the land under water. The land under water could not lawfully be sold at public auction. At the auction sale on August 25, 1952 a Mr. and Mrs. Hirsch purchased the said tax lots at the upset price of $4,700. On November 10, 1952 the city conveyed to the Hirschs the said tax lots as they appeared on the October 22, 1951 tax map. On June 27, 1965 the Hirschs contracted to sell most of the property thus acquired to a corporation controlled by plaintiff, the contract describing the westerly boundary as the mean high-water line of Jamaica Bay. On January 24, 1957 plaintiff applied to the Board of Estimate for a release of the land under the waters of Jamaica Bay from the westerly boundary of the tax lots in question extending about 925 feet westerly to the United States Bulkhead line. The petition recites that the land under water is owned by the City of New York. The petition was filed under section 383–3.0 (subd. 4, par. c) of the Administrative Code of the City of New York, which authorizes the Board of Estimate to release to adjoining landowners, upon such terms and conditions and for such consideration as it may deem proper, the land under the waters of Jamaica Bay. On February 9, 1961 the Board of Estimate approved a new tax map, which showed new streets and a public park in the land formerly under the waters of Jamaica Bay. On March 23, 1961 the Board of Estimate authorized the release to plaintiff of the right of the city to that portion of the said tax lots lying within the lines of Nortons Creek (Jamaica Bay) at no additional consideration, the resolution reciting that (a) the said tax lots included the land under water, and (b) the $4,700 appraisal prior to the auction sale of August 25, 1952 included the land under water. The deed of April 25, 1961 followed the March 23, 1961 resolution, except that it also included a $1 condemnation clause applicable in the event of condemnation with respect to any portion of the premises lying within the bed of any street shown on the map as of the date of the deed (which meant the map of Feb. 9, 1961). In our opinion, defendant city may attack the resolution of the Board of Estimate on the ground that it is unconstitutional or void (*First Constr. Co.* v. *State of New York,* 221 N. Y. 295) and by showing that the facts on which it depends for validity do not actually exist (*United States* v. *Carolene Prods. Co.,* 304 U. S. 144, 153; *Borden's Co.* v. *Baldwin,* 293 U. S. 194, 209; *Defiance Milk Prods. Co.* v. *Du Mond,* 309 N. Y. 537, 540). The March 23, 1961 resolution of the board depends for its validity on the fact that the tax lots in question included the land under water and that the appraisal prior to the auction sale of August 25, 1952 included the land under water, neither of which is true. Since no consideration was paid for the release of the land under water in addition to that paid for the tax lots (which did not include the land under water) when they were purchased on August 25, 1952, the release is void as a gift of city property in violation of section 1 of article VIII of the New York State Constitution. Since the deed of April 25, 1961 is void as to the land under water, plaintiff's action for reformation of the deed must fall (*Friedman & Co.* v. *Newman,* 255 N. Y. 340). Defendant city is not estopped from claiming that an act performed by it is

*ultra vires* (*Moore* v. *Mayor,* 73 N. Y. 238, 245; *Matter of Rhinehart* v. *Redfield,* 93 App. Div. 410, affd. 179 N. Y. 569; *Incorporated Village of Sag Harbor* v. *Chelberg & Battle Post No. 388,* 12 A D 2d 520), even though plaintiff filled in the land under water at substantial cost and thereafter paid taxes on the property (*Harway Improvement Co.* v. *Partridge,* 203 App. Div. 174, affd. 236 N. Y. 563). The tax lots in question may not be deemed to extend to the United States Bulkhead line by virtue of former section 1052–11.0 of the Administrative Code of the City of New York, which refers only to land blocks on the Land Map and not to tax blocks on the Tax Map. In any event, the section could not operate to vary a description of property by including land under water as part of the tax lots. It appears that, after plaintiff purportedly acquired title on April 25, 1961 to the land formerly under water, he filled in the land and thereafter sold part of it to a real estate developer, who built a number of two-family homes thereon and sold them to bona fide purchasers for value. On September 17, 1963 another part of the land was taken by defendant in condemnation for street and park purposes. Under these circumstances, although the deed of April 25, 1961 was void as to the land then under water, the equities require that, upon payment of a reasonable sum by plaintiff, he and his successors in interest be given good title to so much of that land as has not already been condemned for street and park purposes. In our opinion, the sum of 3.6 cents per square foot requested by defendant for the 390,071 square feet involved is fair and reasonable. At the trial defendant consented to this condition if it obtained judgment. This determination is without prejudice to any claim that plaintiff may have for the cost of filling in the land formerly under water taken in condemnation, which he may assert by way of common-law action, if so advised. Beldock, P. J., Ughetta, Christ, Hill and Benjamin, JJ. concur.