Jack Stanislaw, J.
The question here is whether we shall restrain any further use of DDT in Suffolk County by its Mosquito Control Commission. Plaintiff Yannacone sues (individually and on behalf of all of the people of Suffolk County) the county, the County Executive, and the County Mosquito Control Commission (hereinafter MCC), to stop their use of chlorinated hydrocarbon pesticides. We are additionally asked to declare the right of residents to local natural resources undiminished by further use of these pesticides, specifically DDT. Plaintiff claims, and the defendants do not deny, that the use of chlorinated hydrocarbon pesticides does adversely affect Suffolk’s natural resources. However, it is not conceded that these adverse effects are substantial, permanent or irreparable. On the basis of the admitted injury to natural resources, whether minimal or otherwise, a temporary injunction was previously granted.
In clarification of the respective positions of the parties it must be pointed out that the defendants have acknowledged that DDT negatively reacts upon “ good ” as well as “ bad ” insects, and that other chemicals are perhaps at least equally available to control harmful insects, though perhaps at greater cost, lesser efficiency, or both. It is argued by defendants that the MCC operates independently of the defendant County Executive and that many others, hunters and fishermen for instance, participate in activities injurious to natural resources. It is noted that the possible and practical subjugation of certain resources injured by DDT to a possibly greater benefit obtained by the control or elimination of mosquitoes, and the relatively minimal upset of the balance of nature without undue harm or danger to *470 man or boast through the use of DDT, is a valid governmental operation.
So much for the general outline of positions taken in the pleadings. There is also a philosophical difference of opinion here, a probing on both sides running beneath technical expositions and directed to larger issues of man and government in contemporary society. In the first place, the defendants do not feel that the problem presented is one properly subject to judicial resolution. They say the relationship of man to his environment, and the extent of the dominance of the former over the latter, is the concern of the direct representatives of society, the Legislature, and not of the judiciary.
Yannacone obviously claims the existence of a duty owed by the defendants, here specifying it as, among other things, the preservation of local natural resources. If the duty exists the plaintiff may sue for a breach of it. Yet the point seems not so much duty and breach as judgment and evaluation. In and even beyond the context of this action what is involved, by implication, is the extent to which public authority may act with reference to an existing problem when such action, though otherwise valid, may adversely react upon still another area of public interest and concern. Here it is not so much that DDT controls mosquitoes, but rather that the job might be handled differently to minimize a collateral loss of natural resources. So we are asked to declare and preserve the natural resources of Suffolk County untainted by any further governmental application of DDT. This does not necessarily mean that we must choose a substitute, but such a declaration does involve the potential judicial intrusion upon the legislatively based powers exercised by the defendant MCC.
It must be made clear immediately that while we are as cognizant of the value of natural resources as this plaintiff we cannot declare any and every function of government subservient to that value. This is so despite reactions which might be anticipated by reason of continued artificial interference with the balance of nature. As an over-all proposition the interaction of natural factors upset by human intervention has consistently been accepted as a subservient condition of man’s adaptation to and of his environment, whether thoughtful or thoughtless. As noted, the mere diminution of natural resources, accompanied by an increased sensitivity for remaining resources, will not alone permit judicial interference with a legislative recognition of the equation or its reaction to it.
The plaintiff traces the development of equity jurisdiction from the Saxon Kings of England to the present. The aim of *471 this background, is to establish the basis of our equitable jurisdiction to treat the specific problem of a specific person or group of persons who may be without adequate remedy otherwise. Initially plaintiff indicates no legal remedy available to halt the irreparable injury resulting from the continued use of DDT. If that use is wrong equity, it is said, can and should stop it so that this plaintiff has some remedy. That much of plaintiff’s argument cannot be denied, that an otherwise irremediable wrong might be remedied through the exercise of equitable judicial powers. What can be denied and differentiated is the wrong itself.
It is difficult to visualize a governmental upset of a part of the balance of nature in Suffolk County as such a wrong to plaintiff’s interest in their general preservation as, would warrant the application of a remedy at equity, traditional or otherwise. Without denigrating plaintiff’s fears it must be obvious at once that many citizens are fearful of many policies and activities of government for reasons just as valid, subjectively or objectively, as plaintiff’s. Yet where society acts through its representatives, to choose and pursue a course of action, the fact of that choice may not be judicially scrutinized other than as it certainly relates to fundamentally guaranteed rights inherent in our form of constitutional government. In fact, Yannacone does not claim an unconstitutional infringement of right here and, indeed, any such argument could easily be appreciated as subject to counterattack by those less sensitive to the fife cycles of indigenous plants and creatures and simply more hostile to the antisocial tendencies of mosquitoes and other insects at any cost.
But what of the use of DDT as opposed to or in preference over other pesticides not quite so permanently harmful as DDT. DDT has, by its inherent chemical stability, become a continuing factor in some ecological life cycles so as to profoundly alter them and the environmental equilibrium. Thus, it is reasonably apparent that DDT is capable of and actually has to some extent caused extraordinary damage to the resources of this county. If in no other way, the chemical by its very stability has introduced an element of instability in the general ecosystem. For instance, by reducing a food source of some of the larger wildlife and so reducing the over-all larger wildlife population, lesser elements multiply more quickly. These lower forms are presumably more of a nuisance, assuming they in turn survive. Furthermore, DDT affects wildlife directly. Its ingestion, from whatever source, has the capability, it seems, to disrupt reproductive processes or even more simply act as a *472 poison. It is fairly apparent, then that the application of DDT in Suffolk County has and is continuing to have a demonstrable effect on local wildlife, reducing it slowly but surely, either directly across the board or indirectly from the top down, but reducing it nevertheless.
We have a situation where plaintiff has at least minimally sustained a massive effort to validate the allegation that DDT does in fact do biological harm. Yet the defendants have admitted in their pleadings that chlorinated hydrocarbon pesticides do cause such injury. More specifically to the point is the nature and permanency of the harm and nature and extent of the damages sustained by plaintiff and others. It is essentially the defendants’ position that injury caused natural resources is no more than an expected concomitant of progress in terms of the socio-economic development of this rapidly expanding county, and a valid exercise of a governmental function in any event.
We cannot and will not minimize plaintiff’s concern for natural resources and thus take on the respected authorities for that concern cited and quoted in her papers. A pesticide has been utilized by a governmental authority so as to decrease the totality of nature in the raw in Suffolk County. For this reason there is a fine chance that the existing biological equilibrium is in the process of a vast upheaval and rearrangement. But the plaintiff’s interest in the “natural” status quo overlooks interests diametrically opposed to it. One, as inferred, is connected with what might be categorized as a positive public interest, if not policy, toward pest control and the related reduction of natural resources to accommodate a growing population. In fact, it must be constantly emphasized that plaintiff’s argument is principally with DDT, a pesticide of particularly high toxicity and low solubility. Although the nature of DDT is such that it persists in the environment and so may do harm to Avildlife more often or more acutely it seems reasonable to infer that in any event and with the use of any pesticide some wildlife dependent on other lower forms will decrease in numbers at least as its food source is attacked. If plaintiff litigates the continuation of resources and wildlife as exist noAV then the argument is ultimately Avith all artificial efforts directed to pest control, and the focus on DDT raises a question only of degree.
The ultimate difficulty Avith this action is the court’s appreciation of first, its OAvn position in the framework of government, and second, the valid extent and exercise of the police powers by the Legislature. The vested legislative poAvor (N. Y. Const., art. Ill, § 1) includes police powers. Those powers include, of course, the ability to declare a logical system Avhereby individu *473 ais and property are to be burdened so as to permit of the general welfare notwithstanding otherwise valid private interests (People ex rel. Armstrong v. Warden, 183 N. Y. 223).
There is little question that the legislative exercise of the police poAver establishing the availability of a County Mosquito Control Commission was proper. The commission’s exercise of so much of that power delegated to it is questioned, although even that exercise does not extend beyond the standards of its stated function (Martin v. State Liq. Auth., 15 N Y 2d 707). Therefore, the specific question before us is narrowed to the propriety of the commission’s utilization of a particular method of implementation of a properly delegated authority. Plaintiff believes the commission to have gone too far, using DDT when a lesser chemical might have been equally efficacious. The thought is that the police power might be more reasonably exercised so as to cause less harm to plaintiff’s asserted right by the use of a different pesticide. However, Ave have no clear-cut indication either that DDT does not efficiently do that which it is designed to do. As any examination of an exercise of police power requires, we may not weigh positive and negative effects of a particular course of legislative action. The significant area of inquiry relates merely to the existence of the public interest as served by the disputed exercise of police poAver (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537).
It is beyond our competence in this situation to state Avith any degree of certainty that although DDT achieves a legitimate goal some other substance might be used by a legislatively oriented body to achieve it better. The MCC has been authorized to suppress mosquitoes and other insects. If it does that job by using DDT it is acting within the scope of its function. Plaintiff contends that the commission has over-acted, that it is not only killing mosquitoes but everything in sight. That may or may not be so. However, and as we have indicated, it is not clear that the acts complained of, even if we call them wrongs, are without remedy altogether or at least within the province of this court’s equitable jurisdiction.
Along the same lines, plaintiff’s categorization of continued DDT application as a nuisance, that is an injury to person or property, is similarly not quite compelling. There is injury here, but that in part is something which is expected from the application of DDT. Collaterally additional injury to the animal resources of Suffolk County is not so positive an injury to an established right or interest of plaintiff, Avhich right or interest is in fact presented in absolute terms, that this court can declare it to be one.
*474 Plaintiff’s right to protection here is, in our view, too nebulous to the court (though very real to plaintiff) to warrant intervention. Although the court’s appreciation of the resources of Suffolk County is not believed to be less than plaintiff’s we have not been able to find a satisfactory foundation on which to base our interference with the acts complained of as being wholly unjustifiable or so manifestly and broadly injurious as to compel their cessation., Plaintiff’s remedy would seem to be better and more properly located with the policy making legislative unit as opposed to the policy executing body the focal point of this lawsuit.
The complaint must be dismissed.