OPINION OF THE COURT
Leonard P. Rienzi, J.
The defendants are charged with violating sections of the New York City Administrative Code (§ C19-57.0, subd b; § C19-152.0, subd b; § C19-53.0, subd c, par 5) and New York City Charter (§ 489) relating to the transportation of flammable liquids within city limits during restricted hours. Defendants move to dismiss the summonses on the ground that the statutes defining the offenses are unconstitutional based on the commerce clause of the United States Constitution (art I, § 8, cl 3).
On March 15, 1983, at 7:05 a.m. Dennis Dempsey, a truckdriver employed by Island Transportation Corporation, was issued a summons at the Goethals Bridge Toll Plaza in Richmond County for transporting flammable material during restricted hours. On March 18, 1983, at 7:30 a.m. Robert Miron, another Island Transportation *1036 driver, was issued a summons at the same location for similar conduct.
The statutes and fire department safety regulations at issue limit the time period for the transportation of hazardous cargo through New York City. These statutes and regulations apply to flammable liquid shipments passing through the city without a pickup or final delivery point within city limits. The statutes and regulations prohibit such transportation during the rush hour periods from 6:00 a.m. to 10:00 a.m. and from 3:00 p.m. to 7:00 p.m.*
Defendants argue that since the curfew regulations apply only to shipments passing through the city and not to shipments with a pickup or final delivery point within the city, the regulations are unreasonable, unduly burden interstate commerce and discriminate to promote local economic advantage.
Statutes enacted by the Legislature are presumed to be constitutional. A statute should not be set aside as unconstitutional unless such conclusion is inescapable. The burden of showing the unconstitutionality of a statute is on the party asserting it who must demonstrate such fact beyond a reasonable doubt. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150; Defiance Milk Prods. Co. v Du Mond, 309 NY 537.)
The commerce clause of the United States Constitution grants Congress the power “to regulate Commerce * * * among the several States” (US Const, art I, § 8, cl 3). Even where Congress has not acted, the commerce clause prevents States from enacting barriers which obstruct the free flow of interstate commerce. (Cooley v Board of Wardens, 12 How [53 US] 299.) State legislation and regulation designed to foster legitimate State interest and applied without discrimination against interstate commerce do not violate the commerce clause even if there is an effect on interstate commerce. (Hood & Sons v Du Mond, 336 US 525, 531-532.) In areas where there is apparent conflict between activities of legitimate local concern and national interest expressed by the commerce clause, the role of the *1037 courts, in the absence of congressional action, is to make a “delicate adjustment” of conflicting State and Federal claims. (Hood & Sons v Du Mond, supra, p 553 [Black, J., dissenting opn].) This “delicate adjustment” involves “a sensitive consideration of the weight and nature of the state regulatory concern in light of the extent of the burden imposed on the course of interstate commerce.” (Raymond Motor Transp. v Rice, 434 US 429, 441.) As the United States Supreme Court stated in Pike v Bruce Church, Inc. (397 US 137, 142): “Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be úpheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. Huron Cement Co. v. Detroit, 362 U. S. 440, 443. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.”
The purpose of the statutes and regulations is to promote the public safety. Times of travel have been restricted in order to keep hazardous cargo movement out of extremely heavy rush hour traffic.
Even the Supreme Court of the United States has been most reluctant to invalidate under the commerce clause State regulations in the field of public safety. (See Raymond Motor Transp. v Rice, supra, p 443.) As the Supreme Court pointed out in Raymond, “In no field has this deference to state regulation been greater than that of highway safety regulation.” (434 US, at p 443.) Those who would challenge State highway safety regulations must overcome a “strong presumption of [their] validity”. (Bibb v Navajo Frgt. Lines, 359 US 520, 524.)
Defendants argue that because the curfew regulations apply only to trucks transiting the city and not to trucks making a pickup or final delivery within the city, the *1038 regulations favor local carriers, while making business more time consuming and costly for carriers who must pass through the city to reach other final destinations. Likewise, defendants argue that exempting carriers making hazardous cargo deliveries within the city from the curfew regulations is irrational in that those exempted pose the greatest potential safety problem.
At first glance defendant’s argument appears to have merit. Clearly, carriers delivering hazardous cargo to points within the city are exempt from the curfew regulations. The curfew restrictions undoubtedly cause some additional expense and delay for those attempting to transit the city during restricted hours vis-á-vis those making final delivery to points within the city. Clearly those carriers making final delivery of hazardous cargo to points within the city pose a greater safety threat than those merely passing through.
While defendants’ arguments have superficial appeal, they paint a picture of unfair discrimination against nonlocal carriers which is not accurate. Carriers picking up and making final delivery of hazardous cargo within the city are far more stringently regulated than their counterparts who merely pass through the city en route to other destinations.
Carriers picking up or delivering flammable liquids within New York City must use vehicles constructed and equipped in accordance with fire department standards. These standards are contained in 12 pages of regulations. These standards regulate methods of discharge, tank capacity and construction, relief vents, covers and loading systems, tank testing, static elimination, tank mounting, bumpers, mudguards, engine exhaust systems, brakes, axles, engines, tires, transmissions, electrical equipment, fuel tanks, running boards, chassis weights and types, and required fire protection devices. The driver of such vehicles must obtain a certificate of fitness issued by the fire commissioner. Once all the above requirements are satisfied, the owner of the vehicle must obtain a permit from the fire commissioner. Permits are valid for no more than one year at a time. The fire department inspection card for each truck must be carried at all times by the driver.
*1039 By contrast, those in the position of the defendants who are merely transporting flammable liquids through the city need not comply with any of these detailed local safety regulations. The only restrictions which the fire department places on such carriers is to limit them to interstate highways during nonrush hours.
It is true that these curfew regulations might place some burden on interstate commerce by increasing the cost of operations or slowing the movement of goods in interstate commerce. The regulatory scheme, however, is reasonable and designed to promote public safety. This is clearly a legitimate local concern. Any burden imposed on interstate commerce is minimal and incidental. There is no attempt to discriminate against nonlocal carriers in order to protect the economic interests of local carriers. The inconveniences which result from the curfew are not unconstitutionally disproportionate when balanced against the interest in avoiding a potential catastrophe in a densely populated urban environment. (See National Tank Truck Carriers v City of New York, 677 F2d 270.)
Defendants’ motions are denied.

 The city, after consultation with representatives of the trucking industry, has limited the enforcement of the restricted period to the four hours each weekday when rush hour traffic is heaviest — 7:00 a.m. to 9:00 a.m. and 4:00 p.m. to 6:00 p.m.