**CONSUMERS UNION OF UNITED STATES, INC., et al., Plaintiffs,**

v.

**Harry W. ALBRIGHT, Jr., Superintendent of Banks of the State of New York, Defendant.**

**No. 74 Civ. 234.**

United States District Court, S. D. New York.

Feb. 25, 1977.

Peter H. Schuck, Washington, D. C., for plaintiff; John LeMoult, Karpatkin, Pollet & LeMoult, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of N. Y., New York City, for defendant; Judith A. Gordon, Asst. Atty. Gen., of counsel.

Bennett, Ayervais & Bertrand, New York City, for amicus curiae; Robert J. Bertrand, Henry Mark Holzer, New York City, of counsel.

Before HAYS, Circuit Judge, and GAGLIARDI and KNAPP, District Judges.[*]

## OPINION

GAGLIARDI, District Judge.

Plaintiffs move pursuant to Rule 56 Fed. R.Civ.P. for summary judgment seeking to permanently enjoin the enforcement, operation and execution of Sections 266 and 268 of the Banking Law of the State of New York. N.Y.Bank.Law §§ 266 & 268 (McKinney 1971). Plaintiffs allege that these provisions which relate to savings bank life insurance are violative of various provisions of the Constitution of the United States and of the Constitution of the State of New York. Jurisdiction is based on 28 U.S.C. §§ 1331(a) and 1343(3).

---

[*] While all of the judges concurred in the result, one of the judges due to illness did not participate in the written opinion.

This action was commenced on January 14, 1974; a three-judge court was ordered convened pursuant to a memorandum decision and order of September 20, 1974. The three-judge court was duly convened and an oral argument was held on July 13, 1976. For the reasons stated herein, this court, pursuant to the discretionary power granted in Rule 54(c) Fed.R.Civ.P., grants summary judgment in favor of the defendant.[1]

Plaintiffs are Consumers Union of United States, Inc., a New York non-profit membership corporation, Edward J. Gorin, an individual who resides and regularly works in New Jersey, and Ira J. Furman, an individual who resides in New Jersey but regularly works in New York.[2] Defendant is the Superintendent of Banks of the State of New York.[3]

Article VI–A of the Banking Law of New York entitles any savings bank subject to New York law to sell life insurance ("savings bank life insurance" or "SBLI") by establishing a life insurance department. N.Y.Bank.Law § 261 et seq. (McKinney 1971). In this case plaintiff Gorin attempted to buy $30,000 of savings bank life insurance and was refused on the ground that such a purchase would violate Section 268 of New York's Banking Law which prohibits the sale of an SBLI policy to any person who neither resides nor regularly works in New York State.[4] Plaintiff Furman attempted and was denied the opportunity to purchase a $40,000 savings bank life insurance policy. Such a purchase would be in violation of Section 266 of New York's Banking Law which prohibits the sale of an SBLI policy in an amount in excess of $30,000 or in an amount which, together with other SBLI policies already in force on the life of the applicant, would exceed $30,000.[5]

Plaintiffs contend that these two sections violate the equal protection clauses of the Federal and New York State Constitutions. U.S.Const. amend. XIV, § 1 and N.Y.Const. art. I, § 11. They also contend that the two sections violate the due process clause of the New York State Constitution, art. I, § 6; the commerce clause of the Federal Constitution, art. I, § 8, cl. 3; and 42 U.S.C.

1. *See* 6 J. Moore's, Federal Practice ¶ 56.12 (1976). Defendant has filed Affidavits and a Statement in Opposition to plaintiffs' 9(g) statement. Rule 9(g), General Rules for the Southern and Eastern Districts. The court grants summary judgment for the defendant even accepting plaintiffs' 9(g) Statement and the allegations made therein to be true.

2. Inasmuch as the standing of plaintiffs Gorin and Furman is unquestioned, in view of the decision in this case, the court does not reach the question of plaintiff Consumers Union's standing to sue.

3. Currently John G. Heimann is Superintendent of Banks, having assumed that position on August 1, 1975 replacing Harry W. Albright, Jr.

4. § 268. Geographical limitation
 No application for insurance shall be accepted except from a resident of this state or a person working regularly therein.

5. § 266. Limit of insurance
 A savings and insurance bank may obligate itself to pay not more than thirty thousand dollars in the event of the death of one person exclusive of:
 (A) Dividends, profits or paid-up insurance purchased with such dividends or profits; and
 (B) Such amounts as may be payable under (a) a group policy, (b) a policy issued pursuant to conversion privileges of such a group policy, (c) an annuity contract embodying an agreement to refund, upon the death of the holder, to his estate or to a specified payee, a sum not exceeding the premiums paid thereon with compound interest, (d) an agreement to pay benefits of not more than three times the face amount of the policy in the event of death by accident or accidental means, (e) such agreement as it may make to pay an amount equal to a cash surrender value in excess of the face amount of the policy, or (f) an agreement to waive certain future premiums under a policy issued on the life of a minor or on the life of the spouse of the payor upon the death of the payor of such premiums.

 Except as provided in subdivisions (A) and (B) of this section no savings and insurance bank shall issue any policy or policies of life insurance to any applicant, if the insurance so issued together with other savings bank life insurance policies in force on the life of such applicant would exceed the maximum amount that is permitted by this section to be issued by one savings and insurance bank.

 No savings and insurance banks shall write any annuity contract otherwise binding it to pay in any one year more than three thousand dollars exclusive of dividends or profits.

§ 1983. Additionally, plaintiffs argue that Section 268 violates the privileges and immunities clauses of the Federal Constitution. Art. IV, § 2, cl. 1 and amend. XIV, § 1.

SECTION 268: Geographical Limitation

*Equal Protection*

Plaintiffs allege that Section 268 violates the equal protection clauses of the federal and state Constitutions, U.S.Const. amend. XIV § 1 and N.Y.Const. art. I, § 11, in discriminating between residents of New York and nonresidents by prohibiting almost all of the latter from purchasing SBLI,[6] while permitting all residents to purchase SBLI. For the purposes of this action there is no difference in intent, meaning or interpretation between the equal protection clauses in the state and federal Constitutions. *See Gleason v. Gleason,* 26 N.Y.2d 28, 41, 308 N.Y.S.2d 347, 356, 256 N.E.2d 513, 520 (1970); *Bauch v. City of New York,* 21 N.Y.2d 599, 607, 289 N.Y.S.2d 951, 955, 237 N.E.2d 211, 214, *cert. denied,* 393 U.S. 834, 89 S.Ct. 108, 21 L.Ed.2d 105 (1968). As a result, the analysis under the federal equal protection clause is applicable and dispositive of the state equal protection claim.

Under an equal protection analysis, Section 268 creates a discriminatory classification. Section 268 distinguishes between residents or those regularly employed in New York and nonresidents. With respect to their access to inexpensive life insurance, these two classes are not equal and the classification must be considered to be discriminatory.[7]

 The next requirement in an equal protection challenge is to determine what standard the court should apply in reviewing the discriminatory classification. The Supreme Court has consistently recognized that a state has broad discretion in enacting social and economic legislation, like the Banking Law in the case at bar, and has applied the "reasonable relation" test to the review of such legislation. *See City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *San Antonio Independent School District v. Rodriquez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). As the Supreme Court set forth in *Dandridge v. Williams, supra,* 397 U.S. at 485, 90 S.Ct. at 1161:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 [1911]. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 [1913].

A stricter standard of review can only be applied when there is an identifiable "sus-

---

**6.** Section 268 allows persons who regularly work in New York but do not live in the state to purchase an SBLI policy. The regulation also allows a person who lives or regularly works in New York to apply for an SBLI policy on the life of a member of his immediate family even if that person does not live or work in New York.

**7.** The parties agree that there is generally no difference between SBLI and non-SBLI with respect to reliability, quality or service to the public. Plaintiffs' 9(g) Statement ¶ 21. Plaintiffs, however, claim that SBLI is "usually" less expensive than comparable non-SBLI insurance. Plaintiffs' 9(g) Statement ¶¶ 8 & 9. While defendant contests this finding, for the purposes of this motion the court assumes that SBLI is less expensive than comparable forms of non-savings bank life insurance.

844

pect classification" *see, e. g., Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage) or "fundamental interest" at issue. *See, e. g., Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (right to vote); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to travel). No such classification or interest[8] is at issue in this case.

Under the "rational relation" test, there is a presumption of constitutional validity attached to the legislative classification, and the plaintiffs have the burden of demonstrating that Section 268 does not bear a reasonable or rational relation to a legitimate governmental interest of the State of New York. *See City of New Orleans v. Dukes, supra,* 427 U.S. at 303–306, 96 S.Ct. at 2517; *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976); *Madden v. Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland, supra,* 366 U.S. at 426, 81 S.Ct. at 1105.

This court recognizes that New York State, pursuant to its police powers can choose to allow savings banks to sell life insurance or not within the limits of the equal protection clause of the Constitution. In choosing to restrict the sale of SBLI to state residents and individuals who work in New York, the legislature was not acting to protect the state fisc as is often the reason for passing such regulations. *See, e. g., Geduldig v. Aiello,* 417 U.S. 484, 495–96, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974) (upholding California's disability insurance program's

exclusion of normal pregnancies to avoid state subsidy and for other reasons); *Dandridge v. Williams, supra* (upholding Maryland's administration of an aspect of its public welfare program). In fact, the New York law expressly prohibits the use of "public money" for the SBLI system.[9]

■ However, the state does have legitimate economic and social interests in limiting sales of SBLI policies to persons living or working in the state. The first and most important state interest is to provide a benefit and security to its taxpayers or those with an economic nexus (residence or work) to the state. Attracting people to the state to live or work is a legitimate state interest which justifies limiting SBLI under Section 268. This geographic limit is also consistent with the state controlled role of savings banks as local institutions. For example, the state specifically regulates savings banks' investments in mortgages on owner occupied one- and two-family residences located outside of New York or outside a 50 mile radius from the bank's principal office. N.Y.Bank.Law § 235(6) (McKinney 1971). Additionally, the restrictions on SBLI to protect the life insurance industry and to protect savings banks from allowing insurance activities to prosper at the expense of traditional banking functions is a legitimate exercise of the state's power. As a result, this court cannot say that one or more of these goals is not a legitimate governmental interest rationally promoted by the Section 268 requirement here in issue. *See Wright v. City of Jackson, Mississippi,* 506 F.2d 900, 903–4 (5th Cir. 1975); *see also McGowan v. Maryland, supra,* 366 U.S. at 425–26, 81 S.Ct. 1101. Therefore, Section 268 may reasonably be conceived to have a rational basis and does not violate the equal

**8.** Section 268 does not present a durational residency requirement since the regulation requires only that the applicant be a resident of New York or work in New York at the time of the purchase of SBLI. *Accord August v. Bronstein,* 369 F.Supp. 190, 194 (S.D.N.Y.) (three judge court), *aff'd,* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). As a result, the regulation does not infringe the right to interstate travel and cases presenting durational resi-

dence requirements, *e. g., Dunn v. Blumstein, supra* (one year state residency for voting); *Shapiro v. Thompson, supra* (one year state residency for welfare benefits) have no applicability to this case.

**9.** Under N.Y.Bank.Law § 270 (McKinney 1971) the SBLI banks must even pay the full cost of examinations by the Banking and Insurance Departments of New York.

protection clause of the state or federal Constitutions.

*Privileges and Immunities*

■ Plaintiffs contend that Section 268 violates the privileges and immunities clauses of the Fourteenth Amendment § 1 and of Art. IV, § 2 of the United States Constitution. Section 1 of the Fourteenth Amendment provides, in pertinent part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States
. . .

The clause protects from state infringement rights of national citizenship as distinct from the fundamental or natural rights inherent in state citizenship. *Madden v. Kentucky*, 309 U.S. 83, 90–91, 60 S.Ct. 406, 84 L.Ed. 590 (1940); *see Snowden v. Hughes*, 321 U.S. 1, 6–7, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Those rights of national citizenship arise "out of the nature and essential character of the national government, and [are] granted or secured by the constitution of the United States." *Madden v. Kentucky, supra,* 309 U.S. at 92 n. 21, 60 S.Ct. at 410 n. 21, quoting *In re Kemmler*, 136 U.S. 436, 448, 10 S.Ct. 930, 34 L.Ed. 519 (1890). The ability to purchase SBLI is in no way such a right of national citizenship. *See Hawkins v. Moss*, 503 F.2d 1171, 1178–79 (4th Cir. 1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975). The right to travel, recognized to be a right of national citizenship, *Edwards v. California*, 314 U.S. 160, 181, 62 S.Ct. 164, 86 L.Ed. 119 (1941), does not entitle plaintiffs to equality of access to the market in state authorized and regulated SBLI.

Turning to the second privileges and immunities challenge, Art. IV, § 2, cl. 1 of the Constitution provides:

The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

Generally, this clause was intended "to help fuse into one Nation a collection of independent, sovereign States." *Toomer v. Witsell*, 334 U.S. 385, 395, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948). The Supreme Court has established that "one of the privileges which the clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State." *Toomer v. Witsell, supra* at 396, 68 S.Ct. at 1162, cited in *Austin v. New Hampshire*, 420 U.S. 656, 663 n. 9, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975).

Nonetheless, residents and nonresidents can be treated differently without violating the privileges and immunities clause where there are valid reasons for doing so. *American Commuters Assoc., Inc. v. Levitt*, 279 F.Supp. 40, 47–48 (S.D.N.Y.1967), *aff'd*, 405 F.2d 1148, 1152–53 (2d Cir. 1969). The Supreme Court in *Toomer v. Witsell, supra* 334 U.S. at 396, 68 S.Ct. at 1162, set forth the criteria for evaluating the constitutionality of a statute challenged under the privileges and immunities clause of Art. IV of the Constitution:

Like may other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. The inquiry must also, of course, be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures. (footnote omitted)

As already outlined in the equal protection discussion, *supra,* New York State can demonstrate valid independent reasons for limiting SBLI under Section 268 and denying the privilege to certain nonresidents of the state. Because it is consistent with the State's substantial interest in regulating savings banks as local institutions and not nationwide insurance markets, the legislature's passage of Section 268 is not in viola-

tion of the privileges and immunities clause. *See, American Commuters Assoc., Inc. v. Levitt, supra.*

The case at bar can be distinguished from *Toomer v. Witsell, supra,* where the Supreme Court overruled a South Carolina statute requiring nonresidents to pay one hundred times greater licensing fees for the privilege of shrimping in South Carolina waters than the fees required of residents. The Court could not find that the South Carolina statute met the state purpose to conserve shrimp. *Id.* at 397, 68 S.Ct. 1156. And, in any event, the Court did not find "that non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Id.* at 398, 68 S.Ct. at 1163. In contrast, the substantial state interest in Section 268 is based upon the harmful effects of nationwide SBLI sales and the threat to traditional banking functions that sales to persons without a nexus to the state (work or residence) would create.

Similarly, the present case is distinguishable from *Austin v. New Hampshire, supra,* where the Supreme Court overruled a New Hampshire tax on Maine citizens working in New Hampshire that its own citizens did not have to pay. The Court found that the statute conflicted with the underlying privileges and immunities clause policy of comity by imposing a unilateral disadvantage upon nonresidents. *Id.,* 420 U.S. at 665–67, 95 S.Ct. 1191. The affirmative burden of a tax as a condition for working in-state is very different from the denial of a benefit to out-of-state citizens under Section 268.[10] The excessive license fee in *Toomer v. Witsell, supra,* presents a similar unconstitutional affirmative burden not present in Section 268. Plaintiff's Art. IV challenge must fail because of Section 268's reasonable relation to a proper governmental purpose and because of its failure, in privilege and immunities terms, to place a burden or penalty on out-of-state citizens for the benefit of in-state citizens.

### Interstate Commerce

■ Plaintiffs attack Section 268 under the commerce clause, Art. I, § 8, cl. 3 of the United States Constitution, which provides that, "Congress shall have Power . . . To regulate Commerce . . . among the several States . . ." By this clause the power to regulate interstate commerce is expressly committed to Congress and therefore impliedly forbidden to the States. *Pennsylvania v. West Virginia,* 262 U.S. 553, 596, 43 S.Ct. 658, 67 L.Ed. 1117 (1923). The issue in this case is whether Section 268 constitutes a forbidden state interference with interstate commerce in violation of the Constitution.

In that regard, the first question is whether insurance and specifically SBLI is a lawful article of "commerce" within the meaning of the interstate commerce clause. Congress, in 1945, passed the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–15, which on its face holds that the business of insurance shall be subject to the laws of the several states and shall not be subject to federal regulation. The Act's constitutionality was upheld by the Supreme Court in *Prudential Insurance Co. v. Benjamin,* 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946); *see Guardian Life Insurance Co. v. Chapman,* 302 N.Y. 226, 240, 97 N.E.2d 877, 884–85 (1951). While the Act did not give the states power to regulate all aspects of insurance activity, provisions like Section 268 of the New York Banking Law regulating the business of insurance and focused on the policyholder-bank relationship may be within the purview of the Act and not subject to interstate commerce regulation. *See Securities and Exchange Commission v. National Securities, Inc.,* 393 U.S. 453, 459–60, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

---

**10.** Throughout the opinion in *Austin v. New Hampshire, supra,* the Court refers to the "burden" or "imposition" posed by the New Hampshire tax on Maine residents. *Id.,* 420 U.S. at 661, 662, 665, 667 n. 12, 95 S.Ct. 1191. Unlike the Maine residents who were taxed for working in New Hampshire, nonresidents who work in New York are entitled to the benefit of SBLI. Only those nonresidents with no economic nexus to the state are affected by Section 268, and they are not burdened by the regulation but are rather deprived of the benefit of SBLI.

However, under the facts of this case, the court does not find it necessary to establish the applicability of the McCarran-Ferguson Act. For even if insurance is an article of commerce, there is no indication that Section 268 violates the interstate commerce clause. Under interstate commerce clause analysis, the next question is whether Section 268 affects and burdens interstate commerce so as to be subject to the clause. Section 268, unlike most statutes challenged under the clause, does not affirmatively regulate articles actually in interstate commerce. *See, e. g., H. P. Hood & Sons v. DuMond,* 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949); *Toomer v. Witsell, supra* ; *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945). Nonetheless, Section 268 by prohibiting the sale of SBLI to persons who do not work or live in New York does have some impact on interstate commerce.

Having established some burden on interstate commerce, the court must look to "the criteria for determining the validity of state statutes affecting interstate commerce" as established by the Supreme Court and set forth in *Pike v. Bruce Church Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970):

> Where the statute regulates evenhandedly to effectuate a legitimate public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co. v. Detroit,* 362 U.S. 440, 443, 80 S.Ct. 813, 816, 4 L.Ed.2d 852 [1960]. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*See Great Atlantic and Pacific Tea Co., Inc. v. Cottrell,* 424 U.S. 366, 96 S.Ct. 923, 928, 47 L.Ed.2d 55 (1976).

This court has already examined the "legitimate local public interest" of Section 268. On its face Section 268 "concerns interests peculiarly local and does not infringe the national interest in maintaining the freedom of commerce across state lines." *Great Atlantic and Pacific Tea Co., Inc. v. Cottrell, supra* at 372 n. 6, 96 S.Ct. at 928 n. 6, quoting *DiSanto v. Pennsylvania,* 273 U.S. 34, 44, 47 S.Ct. 267, 71 L.Ed. 524 (1927) (Stone, J., dissenting); *see Southern Pacific Co. v. Arizona, supra,* 325 U.S. at 770, 65 S.Ct. 1515. Section 268 is not an attempt by the state to advance its own commercial interest. *See H. P. Hood & Sons v. DuMond, supra,* 336 U.S. at 535, 69 S.Ct. 657; *Pike v. Bruce Church, Inc., supra,* 397 U.S. at 143, 90 S.Ct. 844; *Toomer v. Witsell, supra,* 334 U.S. at .397, 68 S.Ct. 1156. Rather it is a legitimate attempt by the state to insure that savings banks are maintained as local institutions serving neighborhood clientele. The balancing test of *Pike v. Bruce Church, Inc., supra,* conclusively establishes that Section 268 does not violate the interstate commerce clause because the burden it imposes on interstate commerce is minimal compared to the local benefits of the regulation which could not be promoted in any other manner.

*Due Process*

Plaintiffs allege that Section 268 denies them due process of law in violation of Art. I, § 6 of the New York Constitution which provides:

> No person shall be deprived of life, liberty or property without due process of law.

The applicable rules for analysis of substantive due process under the New York State Constitution have been set forth by the New York State Court of Appeals in *Defiance Milk Products Co. v. DuMond,* 309 N.Y. 537, 540–41, 132 N.E.2d 829, 830 (1956):

> The applicable rules of law are well known. Every legislative enactment carries a strong presumption of constitutionality including a rebuttable presumption of the existence of necessary factual sup-

port for its provisions. *Borden's Farm Products Co. v. Baldwin,* 293 U.S. 194, 209, 210, 55 S.Ct. 187, 79 L.Ed. 281 [1934]. If any state of facts, known or to be assumed, justify the law, the court's power of inquiry ends. *United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 82 L.Ed. 1234 [1937]. Questions as to wisdom, need or appropriateness are for the Legislature. Courts strike down statutes only as a last resort, and only when unconstitutionality is shown beyond a reasonable doubt. But, for all that, due process demands that a law be not unreasonable or arbitrary and that it be reasonably related and applied to some actual and manifest evil. And even though a police power enactment may have been or may have seemed to be valid when made, later events or later-discovered facts may show it to be arbitrary and confiscatory. (citations omitted).

In *Defiance Milk* the New York State Court of Appeals affirmed the lower court's striking down a prohibition on the sale of evaporated skimmed milk except in packages of ten pounds or more. The court found, *"no rational ground* for so arbitrary and unnecessary a prevention of the sale of a wholesome food product," *Id.* at 540, 132 N.E.2d at 830 (emphasis added), and found the prohibition was "not a reasonable way of dealing." *Id.* at 541, 132 N.E.2d at 831.

In essence, the substantive due process test for the validity of police power legislation is whether the legislation bears a reasonable or rational relation to a proper governmental interest. *See, e. g., Trio Distributor Corp. v. City of Albany,* 2 N.Y.2d 690, 163 N.Y.S.2d 585, 143 N.E.2d 329 (1957). In the case at bar, "deference to . . . legislative judgment is particularly pronounced in a field as tradi'ionally well regulated as insurance." *Daniel v. Family Security Life Insurance Co.,* 336 U.S. 220, 224 n. 4, 69 S.Ct. 550, 553, 93 L.Ed. 632 (1949). Section 268, as already set forth in the equal protection analysis, *supra,* does not bear a rational relation to a proper governmental purpose. Limiting sales of SBLI to persons with a residential or occupational connection to New York provides a benefit and security to those persons actively related to the state and encourages savings banks to maintain their character as local institutions. Given the strong presumption favoring constitutionality, Section 268 cannot be said to violate the due process clause of the New York State Constitution.

### 42 U.S.C. § 1983

Plaintiffs also allege a cause of action under 42 U.S.C. § 1983 which allows suit for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . ." Plaintiffs' § 1983 claim does not raise any issues not already analyzed and rejected under their equal protection and privileges and immunities claims, *supra.*

### SECTION 266: Policy Limitation

#### Equal Protection

■ Plaintiffs allege that Section 266 discriminates against classes of persons in violation of federal and state equal protection. U.S.Const. amend. XIV, § 1 and N.Y. Const. art. I, § 11. As in Section 268, *supra,* there is no difference in analysis between federal and state equal protection and the analysis under federal equal protection is dispositive of the state equal protection claim. Under an equal protection analysis, the Section 266 $30,000 policy limitation does not present a discriminatory classification. Anyone within the limits of Section 268 can purchase up to $30,000 of SBLI under Section 266 and no one can purchase any more savings bank life insurance. This is not a case that imposes a minimum financial threshold for participation. *Compare Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). The inability of some to purchase additional non-SBLI is not imposed by Section 266. Even if all other insurance were more expensive than SBLI,[11] the state is not prevented from

---

**11.** *See* n. 7, *supra.*

providing that same benefit to everyone (within Section 268 limits). Section 266 does not force anyone to buy SBLI and does not create any discriminatory classification.

Even assuming Section 266 does create some kind of discriminatory classification, the regulation cannot be set aside because under the "rational basis test" applied to Section 268 and applicable to Section 266 for the same reasons, the statute bears a rational relationship to a legitimate governmental interest. *See City of New Orleans v. Dukes, supra.* "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland, supra,* 366 U.S. at 426, 81 S.Ct. at 1105.

The state has a legitimate interest in protecting and controlling savings banks from allowing insurance activities to prosper at the expense of traditional banking functions. By putting a limit on the dollar amount of an individual's policy, the state furthers its legitimate interest in encouraging savings banks to cater to their regular customers instead of focusing their energies on selling expensive insurance policies. Section 266, like Section 268, is in keeping with the state regulation of savings banks as local institutions to serve the needs of moderate income customers.[12] Savings bank life insurance historically has been directed to the needs of persons of small means and the evils of industrial life insurance.[13] "[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge v. Williams, supra,* 397 U.S. at

486–87, 90 S.Ct. at 1162, citing *Lindsley v. Natural Carbonic Gas Co., supra.* This court cannot say that the goals of the legislature in passing Section 266 are not legitimate governmental interests rationally promoted by the Section 266 policy limitation here in issue. *See McGowan v. Maryland, supra,* 366 U.S. at 425–26, 81 S.Ct. 1101; *Wright v. City of Jackson, Mississippi, supra* at 903–04.

### Interstate Commerce

For the reasons already examined under the interstate commerce analysis of Section 268, Section 266 must be upheld as not violative of Art. I, § 8, cl. 3 of the United States Constitution. Again the court need not decide if Section 266 is a permissible state regulation of the sale of insurance within the meaning of the McCarran-Ferguson Act. Even if Section 266 is subject to the interstate commerce clause, the regulation is constitutional. Section 266's burden on interstate commerce is minimal and concededly less than the burden of Section 268. The $30,000 policy limit only affects interstate commerce among those persons working in New York who do not live there and who wish to purchase more than $30,000 in savings bank life insurance. This incidental effect on interstate commerce of Section 266 must be balanced against the local benefits of the section. *Pike v. Bruce Church, Inc., supra,* 397 U.S. at 142, 90 S.Ct. 844. The already established legitimate local purpose of Section 266 (see equal protection analysis, *supra*) clearly outweighs the minimal impact of the regulation on interstate commerce.

---

**12.** The court notes the Banking Department's response to savings bank requests for its support of a no-ceiling billing in 1943 in a memorandum prepared by the then Deputy Superintendent (Banking Department Ans. 5(f), Ex. 7, p. 5):

(c) If the limit on savings bank life insurance is raised to too high a figure, it will encourage the banks to stress sales to the larger policy holder and will tend to cause them to neglect the small policyholder for whom the benefit of the statute was originally intended.

**13.** In 1938 the New York State Legislature empowered savings banks to sell life insurance.

L.1938, c. 471, adding Art. 10–A to the Insurance Law. The New York legislation paralleled the Massachusetts SBLI system and was enacted to correct the evils of industrial life insurance sold by commercial carriers to generally low-income wage earners. *See* Brandeis, Savings Bank Life Insurance for Wage Earners, 1907 Albany Law Journal 50. The savings banks with experience administering "the savings of persons of small means" were best qualified to provide a fiscally sound, economic alternative to insure these persons of small means. *See* Brandeis, *supra* at 50–53.

**850**

*Due Process*

Plaintiffs attack Section 266 as violative of substantive due process under the New York State Constitution, Art. I, § 6. As already set forth in the due process analysis under Section 268, *supra,* the applicable rule under a due process challenge is whether the legislation bears a reasonable or rational relation to a legitimate governmental interest. *Defiance Milk Products v. DuMond, supra; Trio Distributor Corp. v. City of Albany, supra.* As already set forth, the $30,000 policy limitation of Section 266 bears such a rational relationship to a legitimate state interest. SBLI was intended for the small wage earner and a policy limit insures that savings banks will continue to serve these customers and not redirect their energies to large scale life insurance purchasers. The legislature's providing this limitation is in keeping with legislatively imposed ceilings and restriction on other activities of savings banks.[14] The $30,000 policy limit has been gradually increased by the legislature to its present level from a $3,000 limit when the regulation was enacted in 1939. L.1939, c. 882 adding Art. IX–D to the Insurance Law. Section 266 reflects a careful legislative analysis of the need for SBLI balanced against the other requirements of savings banks. Section 266 is rationally related to legitimate state interests and does not violate due process under the New York State Constitution.

*42 U.S.C. § 1983*

Plaintiffs also allege that Section 266 violates rights protected under 42 U.S.C. § 1983. Their § 1983 claim does not raise any issues not already analyzed and rejected.

### CONCLUSION

Therefore, this court finds that Sections 268 and 266 of the New York Banking Law are constitutional and grants summary judgment in favor of the defendant.

---

**14.** *See* Section 268 Equal Protection analysis, *supra.*