John J. Dillon, J.
The action is for a declaratory judgment determining the validity and effect of ordinances enacted by the City of Yonkers which regulate and control the operation of gasoline stations. The plaintiff Oil City Discount Center, Inc., hereinafter referred to as Oil City, is the owner and operator of a self-service gasoline station located in the City of Yonkers. If the ordinances are valid, Oil City will have to cease doing business as a self-service station. The proof established that the station was constructed at a cost of approximately $120,000 and that it commenced doing business on or about May 17, 1962. The business received immediate and widespread public acceptance, apparently due to the reduced prices at which the gasoline was sold. This “ gasoline supermarket ” has eight pumps, but *192 unlike the conventional station it sells no accessories, such as tires and batteries, and furnishes no ordinary services to its customers, such as cleaning windshields and checking oil and water levels. It has no facilities for the servicing or repair of automobiles, and consequently is able to operate with fewer employees than a conventional gasoline station would require to service the same number of customers and to sell the same volume of gasoline. The volume of gasoline sold by the plaintiff is approximately 10 times greater than that of an average gasoline station in the area.
On or about December 11, 1962, after Oil City had been in business for approximately seven months, and at a time when it must have been apparent that it was selling a large volume of gasoline, the City of Yonkers enacted General Ordinance No. 51-1962, which forbade anyone except a service station owner, lessee, operator or employee to pump gasoline. The ordinance was amended in December, 1963, to prohibit any person from pumping gasoline unless he first obtained annually a ‘ ‘ certificate of fitness ” from the Bureau of Combustibles. In March of 1964, another ordinance was enacted which imposed virtually the same requirements as the earlier two. No attempt was made to enforce these ordinances against the plaintiff until October 13, 1965, at which time a police officer of the City of Yonkers served three of plaintiff’s customers with summonses charging each of them with violation of Ordinance No. 8-1964 — “ failure to produce certificate of fitness.”
After issue was joined in this action, plaintiff made a motion for a temporary injunction restraining the city from enforcing the ordinances, and on December 27, 1965, Mr. Justice Nolan granted the motion. The issues of fact in this case and the controlling principles of law were stated in his decision as follows : ‘ ‘ The ordinance complained of was, presumably, enacted in the exercise of the police power and if it is a valid enactment in the interest of public safety it may properly prohibit the sale of gasoline in violation of its terms after its effective date (cf. City of New York v. Foster, 148 App. Div. 258, affd. 205 N. Y. 593). If it is a valid enactment it does not deprive plaintiffs of any vested right. All business and occupations are conducted subject to the police power (People ex rel Armstrong v. Warden, 183 N. Y. 223, 226). But, although such legislation carries with it a strong presumption of validity, due process demands that it be reasonably related and applied to some actual and manifest evil, and the means adopted must be reasonably appropriate to the end sought to be accomplished. The City may not arbitrarily interfere with private business or *193 impose unreasonable restrictions thereon under the guise of promoting the public welfare (Cowan v. City of Buffalo, 247 App. Div. 591).”
Thus, the question to be determined is whether or not the public health, safety and general welfare of the community are endangered by permitting the plaintiff, and others similarly situated, to operate a self-service gasoline station. It is common knowledge that gasoline is a highly flammable and combustible liquid which can be extremely dangerous. Some element of danger is present no matter how or by whom the product is handled. The question in this case is whether the risk of an accident or mishap is increased because of the manner in which plaintiff operates its business, and if so whether the ordinances in question will minimize or eliminate the risk.
The proof established that in 1946, Pelham Oil Co., Inc., opened a self-service gasoline station in Pelham, New York. Oil City in Yonkers is owned by the same persons who own the Pelham station and is operated in the same manner by the same officers and personnel as the Pelham station. The Pelham station has sold over thirty-one million gallons of gasoline since 1959 and the Yonkers station has sold over fourteen million gallons since it was opened. There has never been a fire or any other accident at either station. This is no doubt attributable to careful supervision and strict enforcement of good safety practices by trained personnel and by use of special equipment. Each pump is equipped with a nozzle which prevents sparks and overflowing. There are numerous signs prominently displayed on the premises which prohibit smoking and require that motors be shut off. Each of the islands upon which the gasoline pumps are situated is equipped with a fire extinguisher and oil-absorbent powder to place over spillage. Expert opinion was adduced on behalf of the plaintiffs which established that the self-service gasoline station is safer than the conventional type of station because the manager and other employees are free to concentrate upon and devote their time to enforcing safety rules and regulations rather than pumping gasoline. The plaintiffs’ witnesses, all of whom have expert knowledge as well as extensive experience in the gasoline business, testified that they had never heard of a fire or other accident occurring at any self-service gasoline station. It is clear from the evidence adduced at the trial that there has never been any accident at either the Pelham or the Yonkers station. It was also established that no one has ever filed a liability claim against either corporation. The conclusion is inescapable, from all the evidence presented to the court, that the manner in which the plain *194 tiff operates its business does not constitute a threat to the public health, safety or general welfare of the community, and that consequently tire ordinances which forbid the maintenance of such a business are invalid.
Parenthetically, even if the court had found that this situation justified the city in exercising the police power, it is at best questionable whether the means adopted would be valid since there has been no proof that the test for a 1 ‘ certificate of fitness ” to pump gasoline requires any special ability or technical knowledge. The test consists of eight simple questions which are always the same and the proof is that 369 persons have applied for a permit and that 369 permits have been issued. The only reasonable inference to be drawn from such facts is that the test is meaningless.
The court determines that the ordinances in question are invalid because they have no reasonable relationship to the public health, safety or welfare. This is not to say that the city possesses no power whatever to regulate self-service gasoline stations. An ordinance requiring a minimum number of employees, or requiring the posting of appropriate signs or the installation of fire-extinguishing equipment, or otherwise regulating the operation in a reasonable manner, may be quite permissible according to 'circumstances. There is a wide difference between regulation and prohibition (cf. Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537). The court is now passing only on the ordinances before it.
In this view of the case it is unnecessary to consider the further contentions that the plaintiff had acquired a vested right of which it may not constitutionally be deprived, and that the new Fire Prevention Code effected an implied repeal of the earlier ordinances.