OPINION OF THE COURT
John W. Burke, J.
On April 27, 1976, the Town Board of the Town of North Hempstead enacted Local Law No. 1-1976 prohibiting the operation of self-service gasoline service stations within its unincorporated limits. The enactment in part provides: "Section 29-19 Dispensing of gasoline, motor fuels or other flammable liquids
"The installation and use of coin operated, self-service or customer-operated dispensing pumps at gasoline service stations or automobile service stations is prohibited. Motor fuels, lubricants or other flammable materials may only be sold, dispensed or pumps operated by the station owner, operator or qualified employee of the same.”
Prior to the enactment, Mobil Oil Corporation operated a full self-service gasoline station in North Hempstead and Exxon Corporation a partial self-service station with separate gasoline dispensing islands either for service by an attendant or by the customer. Both stations remain in operation. Upon this joint trial without a jury of an action by the town to enjoin Exxon’s use, and a separate action by Mobil to enjoin enforcement of the local law, the constitutionality of Local Law No. 1-1976 is placed in issue.
Essentially, the legislation under attack is directed against the dispensing of gasoline by persons other than those regarded qualified by business or employment to do so: the owner, operator or employee of a service station. Its predicate is that those unequipped by knowledge, experience or training should not be permitted to handle the volatile products of a gasoline filling station.
*196 Relatively recent merchandising innovations in the retail sale of gasoline, adopted by Mobil, Exxon and most major oil companies, have included the development and installation of dispensing units designed and intended to be used and operated by the retail customer who is invited to purchase gasoline, using his own labors in the dispensing process, usually at a cost per gallon which is less than that customarily charged to reflect the labors of the station owner, operator or employee.
In an operation of the latter kind, as conducted by Mobil and Exxon generally, "full service” is offered the customer at the dispenser; which is to say that the dispensing hose is removed from its position on the island unit and the pump activated by the station attendant, who depresses a lever to energize the pump, inserts the hose nozzle into the fill pipe opening and then applies manual pressure to the trigger mechanism of the hose handle to start the flow of gasoline. The need to apply constant pressure is obviated by a latch device on the handle which may be applied to the trigger to maintain a selected rate of flow and free the attendant to perform other tasks. Overfilling is prevented by the design of the handle/nozzle unit in that pressure from within the fill pipe or other receptacle will release the latch and trigger to stop all flow when the tank has reached or approached a point of full capacity.
By contrast, the self-service gasoline dispensing unit, whether at a totally self-service station or at a hybrid facility that offers the customer a choice of full-service or self-service, requires that an attendant within the sales booth or service building on the premises first activate a console or module control to supply energy to the unit selected by the customer. The attendant’s act of authorization then permits the customer to dispense gasoline in the customary fashion albeit that the self-service handle importantly lacks the latch-open device and necessitates constant manual pressure upon the trigger to maintain the flow of gasoline. Flow will automatically cease when the level within the tank or fill pipe reaches the nozzle, as in the case of the full-service nozzle mechanism, or when the preselected quantity or monetary limit of the sale fixed by the purchaser and registered by the attendant upon the interior control device is attained. At that point, the pump supplying the dispensing unit becomes deactivated, and power *197 is restored only through reactivation of the dispensing unit by the attendant’s manipulation of the control console or module.
Code 30 promulgated by the National Fire Protection Association (NFPA) and the Nassau County Fire Prevention Ordinance impose further requirements in respect of self-service operations where self-service dispensing is permitted by the municipality having jurisdiction. The first provides the following:
"7643. All self-service stations shall have at least one attendant on duty while the station is open to the public. The attendant’s primary function shall be to supervise, observe and control the dispensing of Class I liquids while such liquids are actually being dispensed.
"7644. It shall be the responsibility of the attendant to (1) prevent the dispensing of Class I liquids into portable containers not in compliance with 7620; (2) to control sources of ignition; (3) immediately handle accidental spills and fire extinguishers, if needed. Attendant or supervisor on duty shall be mentally and physically capable of performing the functions and assuming the responsibilities prescribed in this section.”
The Fire Prevention Ordinance, at section 3.6(d), contains these provisions relevant to self-service:
"(i) Gasoline, self-service dispensing units shall only be permitted at outdoor, above-grade locations.
"(ii) A trained attendant shall be on duty at the control panel whenever the station is open for business, and shall observe, supervise, and control dispensing operations.
"(iii) Smoking shall be prohibited in the dispensing area and signs reading 'No Smoking — Stop Your Motor’ shall be conspicuously posted at the dispensing island, in clear view of the motorist.
"(iv) Dispensing operations shall not be permitted until the engine of the vehicle being services is shut off.
"(v) Only portable containers listed by a nationally recognized testing laboratory shall be filled by gasoline dispensing units.
"(vi) Emergency power control switches shall be clearly identified, and shall be capable of disconnecting power to all dispensing units. They shall be located at least twenty (20) feet from the nearest dispenser, but not more than fifty (50) *198 feet from the most remote dispenser. The attendant shall be in a location whereby all dispensing units are clearly visible.
"(vii) Only dispensing nozzles of the self-closing type shall be permitted for self-service dispensing devices. There shall be no latch-open device on any self-service dispensing nozzle.
"(viii) Plans for the installation of self-service gasoline dispensing installations shall be submitted to the Fire Marshal for approval prior to commencement of installation.
"(ix) Dispensing devices that are in compliance with standards set by the Underwriters’ Laboratories, Inc., or Factory Mutual Engineering Division, shall be deemed acceptable.
"(x) The number and type of fire extinguishers shall be provided as indicated on plans submitted to the Fire Marshal as required by paragraph (viii) above, and located in the vicinity of the emergency controls.
"(xi) An approved audible intercommunication system shall be required between the attendant and the dispensing area, and shall be maintained in proper operating condition.”
While the Town of North Hempstead does not dispute the compliance of Mobil and Exxon with all requirements of the county ordiannce and their agreement with the requisite presence of an attendant under code 30, its legislative thrust is nonetheless to deem customer handling of gasoline so potentially dangerous as to warrant statutory prohibition of the self-service form of sale or procurement. The adversaries of Local Law No. 1-1976 counter that self-service facilities present no public hazard or evil to justify the enactment; that the prohibitions are unrelated to the alleviation of any public danger and are excessive and discriminatory.
The court at the outset rejects the contention that section 328-a of the General Business Law, requiring the presence of an attendant where gasoline is sold from coin-operated dispensers, may be equated with or imply recognition by the State of self-service sales of gasoline. While the thought may be that regulated approval of the more objectionable form of gasoline sale connotes the Legislature’s approval of the less objectionable, or that the town’s prohibition of coin-operated devices conflicts with the State’s pre-emption and approval thereof under section 328-a, the plain fact is that the New York State Legislature has evinced no intention to occupy the entire field of gasoline dispensing and has adopted neither law nor policy concerning self-service dispensing, leav *199 ing the State’s municipalities free to legislate upon the subject within the permissible limits of constitutional criteria and pursuant to power granted them by the State. Such power is specifically extended under subdivision 5 of section 130 of the Town Law through which towns of this State are permitted to enact laws "[r]egulating the use, sale, storage and transportation of fire arms, fire works, explosives and inflammables or prohibiting the use, sale, storage and transportation of any of them”.
The court does not accept, of course, that the mere delegation of such police power, however specific, clothes the local legislative body with unlimited freedom to enact protective laws, in this instance regulating or prohibiting a method of selling an inflammable product. The town board’s incursion upon private interests in the name of the public interest demands that its interposed authority be not arbitrary or oppressive and that the means of accomplishment are reasonably necessary to the legislative objective (Goldblatt v Town of North Hempstead, 369 US 590, 594-595; Fisher Co. v Woods, 187 NY 90). "[W]hen the question [of legislative interference] arises, there are two tests to be applied: 1. Is there a real evil, reasonably to be anticipated and to be guarded against? 2. Is there a reasonable relation between the evil and the proposed remedy?” (Safee v City of Buffalo, 204 App Div 561, 563; see, also, Nichols Herkimer Corp. v Village of Herkimer, 34 AD2d 371.)
Local Law No. 1-1976, adopted in furtherance of "safeguarding the public health, safety, and welfare of the citizens and residents of the Town of North Hempstead” recognizes as evil or as a public endangerment that mode of gasoline dispensing which exposes those unskilled in or unfamiliar with the handling of a volatile fuel to the risks associated with it. The needlessness and impropriety of the measure are claimed by the oil companies in this case to be supported by public acceptance of self-service dispensing and an exemplary record of experience in which technology, industrial practices and regulatory specifications provide reasonable assurances of the customer-user’s safety from hazard.
It is undoubtedly true, as Mobil and Exxon represent, that the self-service form of gasoline dispensing has gained appreciable acceptance at the retail level, increasing its share of the national market from 6.2% in 1974 to an estimated 45% by 1978. Moreover, the increasing popularity of self-service gaso *200 line may well be attributable to the economic preferences of consumers in selecting a product averaging a few cents less per gallon in price than the same product at a full-service station. Evidence of such trends indeed bespeaks the general effects of self-service which will be contravened in the Town of North Hempstead and, at least in part, prompts the opponents of the local law to demand conformity with the greater number of jurisdictions permitting the self-service sale of gasoline. With far greater emphasis, however, the oil companies base their attack upon the absence of legislative findings or knowledge that the public’s access to gasoline dispensers produces any greater hazard than that accompanying conventional dispensing. The trial record is thus laden with ample testimony and other proof that self-service dispensing incorporates those devices, systems and mechanisms, both required and optionally added, sufficient to safeguard the user from the obvious perils which may arise from both the normal filling procedure and detected misuse. To underscore the safety record of the industry, it is shown that during the period 1975-1977 there has been no reported incident of a gasoline station fire anywhere in the nation traceable to the use of self-service facilities.
Assuming, without holding, that such evidence is substantially without refutation, as contended by Mobil and Exxon, the question may be posed whether the application of judicially evolved principles requires the invalidation of Local Law No. 1-1976; for if it be true that a hazardous form of gasoline sale does not exist in self-service dispensing or that its dangers are unreasonably anticipated and no more threatening than those extant in permissible dispensing, the legislation must be held arbitrary and capricious. The court does not reach that conclusion.
This exercise of police power is to be upheld if any state of facts, known or reasonably to be assumed, affords support for it (United States v Carolene Prods. Co., 304 US 144; Lighthouse Shores v Town of Islip, 41 NY2d 7, 11). It is unnecessary that the legislative body have actual knowledge of the incidence of danger or that it defer enactment until faced with the actualities of injury to its citizens (City of Rochester v Gutberlett, 211 NY 309; Matter of Stubbe v Adamson, 220 NY 459, 469); rather, it is entitled to act upon reasonable apprehension of danger (Lighthouse Shores v Town of Islip, supra; Matter of Stubbe v Anderson, supra; Wiggins v Town of *201 Somers, 4 NY2d 215). This court does not know, nor did the town board record all those reasons and considerations which moved it to adopt the local law in question. Its members, individually and collectively, are presumed to possess knowledge obviating capricious action (East N. Y. Sav. Bank v Hahn, 326 US 230; Lincoln Bldg. Assoc, v Barr, 1 NY2d 413). Not the least of such knowledge is the sure and certain truth that gasoline possesses highly volatile, inflammable and explosive characteristics and that control of the substance is well within the realm of public safety (People v Faxlanger, 1 AD2d 92, affd 1 NY2d 393; Town Law, § 130, subd 5). If, as here, the legislative judgment shall be so exercised as to limit the handling of an innately dangerous commodity to fewer and more skilled hands, it is not for this court to countermand the underlying justification of the enactment. As observed in Reingold v Harper (6 NJ 182, 195-196): "the court cannot substitute its own discretion for that of the lawmaking body, even though there be a difference of opinion as to the need and the propriety of the means devised to serve the need. The constitutional function of judicial review does not include supervision of the legislative judgment within the lawmaking body’s exclusive field of action * * * The court is not at liberty to appraise the information available to the legislative department as if that inquiry were a judicial proceeding. It 'may not test in the balances of judicial review the weight and sufficiency of the facts to sustain the conclusion of the legislative body,’ nor may it set aside the act 'because compliance with it is burdensome.’ Standard Oil Co. v Marysville, supra [279 US 582]. Prohibition of the self-service device as a means of distribution of this highly flammable commodity is permissible if the Legislature may reasonably conceive that method to be dangerous to the public health and safety. Timely preventive action is of the essence of the police power to protect that interest. Where the mischief is within the range of the police power, the legislative body of necessity has a wide discretion in the choice of means for effective remedial action. Policy is for the judgment of the Legislature.”
Apart from the reasoning just applied, it is necessary to advert to the earlier evidentiary assumption that self-service stations function in a structured environment of technological precaution and that their record of safety is without incident. The probability that peril has been minimized to the point that self-service is an improper sphere for the legislation in *202 issue must be weighed against the completeness of such evidence, its source, the testimony adduced by the town and the inescapable assumption that untold acts of customer misuse, mistake and disregard occur constantly in a retail market in which approximately 45% of all gasoline sold is self-served. The console attendant with manifold duties cannot possibly be expected to see and put a stop to every illicit or dangerous practice. And it is precisely because of human and mechanical imperfection that public protection has been imposed. The balance of considerations favoring the protective local law is not outweighed by the case for Mobil and Exxon.
The controlling authority holds that legislative enactments carry a strong presumption of constitutional validity and will be adjudged otherwise only when unconstitutionality is demonstrated beyond a reasonable doubt (Lindsley v Natural Carbonic Gas Co., 220 US 61; Dedance Milk Prods. Co. v Du Mond, 309 NY 537; Wiggins v Town of Somers, 4 NY2d 215, supra; Lighthouse Shores v Town of Islip, 41 NY2d 7, supra). The concomitant presumption that the legislation is supported by necessary factual support, though rebuttable, withstands inquiry here, for the evidence brought to bear against it merely questions the wisdom or appropriateness of banning self-service gasoline dispensing. Those consideratins are reserved to the town board which, having perceived a danger and a need, has rationally implemented a solution. It is not now the province of this court, absent the town board’s arbitrariness or in the face of fairly debatable questions about the reasonableness of the prohibition of self-service operations, to interpose its own policy determination.
In summary, the oil companies upon the trial of these actions have presented a body of evidence in conflict with the purport of Local Law No. 1-1976 adequate to raise debate concerning the presence of danger in the self-service dispensing of gasoline but insufficient to invalidate the legislation. Accordingly, the court finds that the local law is a proper exercise of the town’s police power and constitutionally valid; further, the court finds that the Town of North Hempstead is entitled to the injunctive relief sought herein (Town of Hempstead v Goldblatt, 19 Misc 2d 176, affd 9 AD2d 941, affd 9 NY2d 101, affd 369 US 590; Town of North Hempstead v Colonial Sand & Gravel Co., 14 Misc 2d 727; Matter of Harbison v City of Buffalo, 4 NY2d 553).
*203 Any motions not otherwise specifically decided herein are deemed denied.