OPINION OF THE COURT
Fuchsberg, J.
At issue in this case is the constitutionality of a zoning ordinance that permits private, nonprofit clubs but not commercial enterprises to operate tennis courts in a residential district.
Defendant Park Shore Country Day Camp owns 15 acres in an area zoned for one-acre residential lots. In 1959, the Town of Huntington’s Zoning Board of Appeals granted Park Shore’s application for a special exception permit to operate a day camp and nursery school on its property. Without obtaining a building permit or any further exception, in 1968 two tennis courts were constructed for the use of the camp. With no more leave, by 1974 12 more courts had been built and at that time, in addition to their availability to the camp, all 14 were put to commercial use for adults generally. In furtherance of its new venture, Park Shore commenced an advertising and promotional campaign designed to attract the general public to its tennis facilities.
The town then instituted this action to enjoin Park Shore from operating the tennis courts for commercial purposes. By way of counterclaim, Park Shore sought a declaration that the zoning ordinance was unconstitutionally discriminatory, essentially because a special exception provision did permit similar courts owned and maintained by nonprofit entities to be situated in residential districts.[1] Specifically, it pointed to two *65 private clubs that it claimed had facilities virtually identical to those the town now tried to enjoin. To advance its contention at trial, it introduced opinion evidence that, in proportion to the population, a greater number of tennis courts was needed to serve the town’s residents.
Under subdivision 9 of section 62-11.3 of the Huntington Zoning Ordinance, tennis courts, provided they are not operated as a business, may be located in residential districts as special exceptions if approved by the board.[2] Moreover, subdivision 13 of the same section expressly permits tennis courts in such districts when associated with private schools, day camps and health camps. No approval pursuant to this provision was ever sought prior to the construction of the tennis courts here, and the management of Park Shore expressly refused to operate their tennis facility as a private club. When Park Shore belatedly applied to the board for special exception status in the spring of 1976, it nevertheless was granted permission to maintain 6 of the 14 courts for the use of the children enrolled in its day camp. Accordingly, the particular relief the town sought in its action was removal of the other 8 courts along with a permanent injunction against any future commercial use of the tennis courts. However, Special Term ruled otherwise. Adopting Park Shore’s contentions, it declared the zoning provision unconstitutional as applied, and denied the town’s request for an injunction. The Appellate Division unanimously reversed. For the reasons that follow, we agree with its determination.
Preliminarily, we must recognize that zoning ordinances, like all legislative enactments, are invested with an exceedingly strong presumption of constitutionality (Marcus Assoc. v Town of Huntington, 45 NY2d 501, 505). Park Shore, therefore, shouldered the very heavy burden of demonstrating beyond a reasonable doubt that the ordinance was violative of equal protection standards (see Wiggins v Town of Somers, 4 NY2d 215, 218). Viewed from another perspective, the classification scheme devised by the local legislature would have to *66 be sustained if it could be said to be "reasonably related to some manifest evil which, however, need only be reasonably apprehended” (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11). Thus, if on any interpretation of the facts known or reasonably to be perceived, the zoning measure falls within the embrace of the town’s authority to regulate property as a means of promoting the general welfare of the community (Town Law, § 261), it is insulated from attack.
Furthermore, it is a point too obvious to belabor that the separation of business from nonbusiness uses is an appropriate line of demarcation in delimiting permitted uses for zoning purposes. On that basis, business uses most certainly may be excluded from residential districts, whose primary purpose, almost by definition, is to provide an environment for "safe, healthful and comfortable family life rather than the development of commercial instincts and the pursuit of pecuniary profits” (Matter of Wulfson v Burden, 241 NY 288, 300-301). On the other hand, it is hardly less obvious that there are commercial enterprises whose activities will not necessarily undermine the values fostered by such districts, but, indeed, may even serve to complement and enhance the tenor of residential living. Flexibility to pursue such an accommodation is generally imparted to zoning authorities by provision for the granting of a special exception or special use permit.
This device operates by the "inclusion into the zoning pattern * * * of uses considered by the legislative body to be essentially desirable (or essential) to the community, its citizenry or to substantial segments thereof’, while protecting "against its location * * * without restrictions or conditions tailored to fit the special problems which the use presents” (3 Rathkopf, Law of Zoning and Planning [4th ed], p 54-1). It is designed to make clubs, recreational facilities, schools and hospitals, for example, eligible for special exception treatment, subject to the zoning board’s consideration of the particular needs of a neighborhood (see 2 Anderson, New York Zoning Law and Practice [2d ed], §§ 19.01-19.04). In effect, the town’s position is that the exception embodied in subdivision 9 of section 62-11.3 represents no more than the exercise of this well-established method of regulation, while, for its part, Park Shore, concentrating on the fact that two nonprofit private tennis clubs situated in the residential district are at present physically and functionally akin to its own commercial enterprise, argues that it is arbitrary, capricious and contrary to *67 equal protection for the town to rely on the for-profit nature of a facility’s sponsorship as the critical difference on which eligibility for a special exception permit is to turn.[3]
Park Shore’s assertion, which assumes that the impact of a particular use is a matter independent of the nature of the ownership, has too easy a ring. It is beyond dispute, for instance, that, even if all incidents of the use at this time are the same, there are characteristics of defendant’s venture that may render it, at least potentially, more burdensome to the residential neighborhood in which it is carried on than the same activity conducted by a nonprofit club (cf. 1 Anderson, New York Zoning Law and Practice [2d ed], §§ 8.20, 9.36). Illustrations come readily to mind. Regardless of the desirability of the activity conducted, it may be expected that an entity motivated by profit will, almost of necessity, be concerned with the securing, if not the aggrandizement, of those profits. In this pursuit, it may advertise and promote its availability in an effort to attract greater numbers of people, precisely what was done here. A commercial venture’s understandable goal of maximizing earnings by seeking peak utilization of its facilities, no matter how efficiently engineered, poses the threat of more crowds, more noise, more traffic, more transients and more of other forces disruptive of the serenity of the neighborhood (see Town of Los Altos Hills v Adobe Creek Props., 32 Cal App 3d 488, 516-517). And, in times of economic adversity, the owners of an unprofitable business are certainly much less likely to pump good money after bad in order to prevent a white elephant from becoming an eyesore than are members of a private club, who, moved by social rather than merely economic interest, may more readily consider adopting measures, even at some cost to themselves, to maintain the appearance of the property.
It is also reasonable to foresee that a private club conducted on a nonprofit basis, while providing a desirable recreational area, may in other ways avoid at least some of the drawbacks of commercial ownership. Because its members are more apt to think of long-term benefits rather than the immediate ones *68 sought by the current patrons of a profit-oriented enterprise, its facilities are less likely to be overtaxed. And, because the ties between the club and its members will probably be stronger than those between a business and its customers an enhanced sense of permanency could promote concern for the welfare of the town as well.
In any event, it is by no means irrational for a legislative body to hold, and to act, on such apprehensions. In that connection, the constraints imposed by the separation of powers compel us to remember that "[i]t would not matter whether the [law] courts thought the legislation unwise, or that its purpose could better be achieved in another way”. (Matter of Albert Simon, Inc. v Myerson, 36 NY2d 300, 303). It is a legislature’s right and, particularly in matters of zoning and planning, its obligation as well to anticipate future problems and to enact measures to guard against them, though in fact the anticipated events may never come to pass.
It should not be surprising then that other tribunals, in and out of New York, have not been loath to uphold zoning practices that permit special exception uses in residential zones on condition that the activity not be conducted as a commercial or profit-making venture (see Matter of Tarolli v Howe, 37 NY2d 865 [domiciliary care facility denied special exception because it violated condition that it be "not for gain”]; Matter of Nelson v Pierce, 281 App Div 994 [private golf club permitted "except where the principal activity is one customarily carried' on for gain”]; McCarter v Beckwith, 247 App Div 289, affd 272 NY 488 [bathing beach special exception revoked for violation of proscription on "any activity commonly conducted as a business”]; Village of East Hampton v Mulford, 188 Misc 1037 [riding academy violated ordinance when “carried on as a gainful business”]; see, also, Shady Grove v Parish of Jefferson, 203 So 2d 869 [La] [exclusion of commercial tennis courts]; Town of Los Altos Hills v Adobe Creek Props., 32 Cal App 3d 488, supra [exclusion of commercial recreation park]; Hart Appeal, 410 Pa 439 [exclusion of commercial swimming pool]). Nor have courts been unwilling to enforce strict compliance with the noncommercial requirement no matter the desirability of the activity or the relatively small disruption it might occasion (see Incorporated Vil. of Muttontown v Friscia, 58 Misc 2d 912 [Wachtler, J.]).
Seen in this context, the Huntington ordinance is neither unusual nor unreasonable in distinguishing between tennis *69 courts commercially operated and those operated by a "[private club * * * [whose] chief activity is not a service customarily carried on as a business” (Huntington Town Code, § 62-11.3, subd 9). Consequently, it cannot be said that the defendant has met the difficult burden of proving that, in its enactment of the exception, the town was acting other than in a manner rationally related to the preservation and fostering of the values of a residential district (see McCarter v Beckwith, 247 App Div 289, 293, supra; cf. Village of Belle Terre v Boraas, 416 US 1, 9).
The order of the Appellate Division should therefore be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Fuchsberg.
Order affirmed.

. Defendant, which continues to operate its private nursery school and day camp, did not claim that the zoning ordinance is confiscatory or otherwise precludes the use *65 of its property for a purpose to which it is readily adaptable. Neither did it contend that there was any discrimination in the enforcement of the zoning ordinance vis-ávis other commercial tennis enterprises.

. As uses specially permitted by the Zoning Board of Appeals, this subdivision authorized the location of a "[p]rivate club * * * private playground, park or similar outdoor recreational facility, or lodge in a Residence District or Business District provided: (a) the chief activity is not a service customarily carried on as a business”.

. At argument of this appeal we learned that pursuant to amendments to section 62-11.3 enacted in July, 1977 and May, 1978, the Huntington Zoning Ordinance now disables the board from exercising its previous power to grant special exceptions to private clubs or similar outdoor recreational facilities in a residentially zoned district. Our decision in this case, however, makes it unnecessary for us to consider either the effect or any possible retroactive application of these amendments.